Edward **WOJCIECHOWSKI**

v.

STATES MARINE CORPORATION OF DELAWARE.

Civ. A. No. 8740.

United States District Court
D. Maryland,
Civil Division.

June 10, 1957.

Fred T. Ginsberg, Eugene V. Chircus, Baltimore, Md., for plaintiff.

Randall C. Coleman, Jr., Baltimore, Md., Ober, Williams, Grimes & Stinson, Baltimore, Md., for respondent.

CHESNUT, District Judge.

In this case the plaintiff sued a ship for damages alleged to have been caused by the unseaworthiness of the ship. The principal contention on the evidence was as to whether the plaintiff had in fact been injured. The jury found a verdict for the defendant and the plaintiff has moved for a new trial.

While the plaintiff's motion asserts a number of reasons, only two have been pressed. They are (1) that the court should have directed the jury to find that the ship was unseaworthy, and (2) that the court erred in admitting as evidence records kept in doctors' offices concerning the visits by the plaintiff.

■ As to the first point, it is to be noted that the plaintiff's counsel did not ask for a directed verdict in favor of the plaintiff but only on one particular issue in the case. The burden of proof was, of course, on the plaintiff to establish the unseaworthiness of the ship by a preponderance of the evidence. Although the court declined to grant a peremptory instruction as to the issue of seaworthiness, the jury were instructed substantially as requested by plaintiff's counsel, that if the jury found that any of the appurtenances of the vessel were defective, or did not do the job for which they were intended, then the vessel was unseaworthy, and that if they further found that the plaintiff was injured by reason of such unseaworthiness, then the verdict of the jury should be for the plaintiff.

On October 22, 1955, the ship was lying at a Baltimore dock loading steel rails from a railroad car on the adjoining pier. There was conventional rigging for hoisting the steel rails from the car and

swinging the load over the side of the ship and lowering it through the hatch into the hold. A part of the loading apparatus included a chain leading from the preventer cable to a ring which was fastened into a padeye attached to the inside of the ship's bulwark. This ring broke allowing the loosened chain to swing across the deck toward the open hatch. The plaintiff, a longshoreman stevedore employed by the well-known Jarka Stevedoring Corporation, was operating the electric winch which was situated near the open hatch. The plaintiff claimed, and the defendant denied, that the chain in so swinging struck the plaintiff. Despite the accident the load was successfully lowered either into the hold or back onto the railroad car without injury to any one other than the disputed claim of the plaintiff. Immediately the ship's officers on deck at the time, one of whom was within a few feet of the hatch and winch where the plaintiff was working, inquired particularly and loudly whether any one was hurt. On ascertaining that no one had been hurt by the accident, which might have been a very serious one, the broken ring was not retained for critical examination as to what caused it to break. The plaintiff made no statement at the time to any representative of the ship that he had been struck, and no claim was made against the ship until about four months thereafter. He continued to work the winch the rest of the day and was congratulated by one of the ship's officers on his efficient and successful operation of the winch in handling the load after the ring broke. On the following Monday, two days later, the plaintiff reported to the representative of his employer, Jarka Corporation, that he had been hurt on the preceding Saturday when the accident occurred. He was told to see the doctors representing the compensation insurer of the Jarka Corporation. He made many visits to their offices during the ensuing months. Their routine records with regard to the plaintiff's visits and condition were offered in evidence over objection of plaintiff's counsel. And the alleged error

in admitting these records is the ground pressed as the second reason for a new trial.

In my opinion the jury were sufficiently instructed on the issue of unseaworthiness of the ship. I do not think the circumstances required a peremptory instruction to the jury that they must find that the ship was unseaworthy. And plaintiff's counsel did not enter any exception to the charge of the court in this respect. See Rule 51, Fed.Rules Civ. Proc., 28 U.S.C.A. The most important factual controversy was whether the plaintiff had been injured by the accident. The reasonable inference from the jury's verdict in favor of the defendant is that they were not satisfied by a preponderance of the evidence that he had in fact been struck by the swinging chain.

On the evidence point the records objected to were those of the offices of Drs. Vinup, Buchness & Buchness. They were a firm or associates engaged in the practice of industrial medicine. In the particular case the plaintiff went to see them by direction of his employer. He visited them at intervals over a period of a year or more. In their usual office routine, records were kept of his several visits, with short notations pertaining thereto based on the doctors' observations. The records were produced by their secretary who testified to their being kept in the usual office routine.

Plaintiff's counsel objected to the introduction of the records generally but as the court reporter's transcript will show, the particular stated ground of the objection was that the file relating to the plaintiff contained at the end two letters which, it was contended, were not themselves a part of the daily office routine. On examination they were found to be copies of a letter of inquiry by the compensation insurer to the doctors asking a report as to his treatment and condition of the plaintiff, together with the doctors' reply. The office records were admitted excluding the two letters. When they were separately offered by the defendant the court sus-

tained the plaintiff's objection to them. They have been identified and can be found in the record although not admitted in evidence. As the particular objection stated by counsel for the plaintiff to exclude the records related only to the two letters which were excluded, the objection was properly overruled. See Rule 46, F.R.C.P.

The plaintiff's present contention as to the basis for a new trial is that these doctors' records were inadmissible. The question of their admissibility was carefully considered at the time and since then I have re-examined the question more thoroughly and adhere to the view that the records were admissible. They were offered on the authority of both federal and Maryland statutes known as the "shop rule" for evidence of routine records which applies both to commercial and professional records. 28 U.S.C.A. § 1732, and Flack's Maryland Ann. Code, Art. 35, § 68. Both statutes are substantially alike. The federal statute has been in force since 1936 and the Maryland statute somewhat longer. Under the authority of these statutes it has long been and now is currently customary practice to admit hospital records in personal injury cases at least insofar as they relate to medical and pathological conditions regarding patients. And similarly reports from doctors' offices like those here involved are admissible when shown to have been in accordance with customary routine office practice relating to the patient.

Illustrative cases to this effect will be found in Jones v. State, 1954, 205 Md. 528, 109 A.2d 732; Shirk's Motor Express v. Oxenham, 1953, 204 Md. 626, 106 A.2d 46; Lee v. Housing Authority of Baltimore, 1953, 203 Md. 453, 101 A.2d 832. See also Terrasi v. South Atlantic Lines, Inc., 2 Cir., 1955, 226 F.2d 823; Tucker v. Loew's Theater and Realty Corp., 2 Cir., 1945, 149 F.2d 677; Washington Coca Cola Bottling Works, Inc., v. Tawney, 1956, 98 U.S. App.D.C. 151, 233 F.2d 353; Croll v. John Hancock Mut. Life Ins. Co., 3 Cir., 1952, 198 F.2d 562. Under Rule 43, F.R.C.P., the office records were admissible if properly authorized either by the federal or Maryland rule of evidence.

Plaintiff's counsel cites with reliance New York Life Ins. Co. v. Taylor, 1944, 79 U.S.App.D.C. 66, 147 F.2d 297. There the majority of the court held that a statement made in a doctor's certificate of death attached to the plaintiff's proof of death under an accident insurance policy was inadmissible when it did not purport to have been made on knowledge and was inconsistent with the plaintiff's claim that the death was accidental, the defendant's contention being that it was suicidal. The factual situation there, however, was, I think, not comparable to the office records in the instant case. The situation here is much more like the evidence offered and held admissible by the same court in the later case of Washington Coca Cola Bottling Works v. Tawney, supra. See also the comment on the Taylor case in the later case of Medina v. Erickson, 9 Cir., 1955, 226 F.2d 475. The only Supreme Court case that I have noted relating to evidence under the statutory so-called "shop rule" is, of course, the leading case of Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. There, in a damage suit against a railroad, the court held inadmissible a report made by the engineer of the train involved purporting to give an account of the accident, made two days after the event and before his death. It was held that the record was not one made in pursuance of daily routine with regard to railroad operations but was in the nature of a statement preparatory to anticipated litigation. The factual situation was very different from that in the instant case, and I do not find that the reasoning of the court in excluding the report in that case requires the exclusion of the doctors' records here involved. And this has been the view in many subsequent cases in federal courts as illustrated by the above citations. Even if the records were technically inadmissible I do not think, in

view of the whole case, that their admission was prejudicial to the plaintiff. There was other much more extended medical evidence as to the plaintiff's condition given by two qualified doctors, one called by the plaintiff and the other by the defendant. As the jury found a verdict for the defendant, the reasonable inference is that the plaintiff's physical condition was not the decisive factor in the case.

Another reason assigned in support of the motion for a new trial was that portion of the charge to the jury stating the law applicable to rights of the plaintiff under the federal Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq.; but the argument on the motion on that point was expressly abandoned by counsel for the plaintiff.

For all these reasons I conclude that the motion for a new trial should be and it is hereby overruled this 10th day of June, 1957.