BALTIMORE AMERICAN UNDERWRITERS OF
BALTIMORE AMERICAN INSURANCE COMPANY
*v.* JOHN D. BECKLEY ET AL.
[No. 40, October Term, 1937.]

*Decided December 10th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter L. Clark* and *Roszel C. Thomsen*, with whom was *J. Gilbert Prendergast* on the brief, for the appellant.

*Edward L. Ward*, with whom was *Nathan R. Johnson* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The appellant insurance company, having paid a fire loss covered by its policy, and asserting its contractual right of subrogation, sued the appellee upon the theory that the fire resulted from negligence in the performance of his contract to repaint the room in which it occurred. A verdict for the defendant was directed by the trial court at the close of the testimony produced by the plaintiff, and the only exception in the record before us questions the propriety of that action.

The defendant John D. Beckley was a subcontractor engaged to remove the stain and varnish from paneling in the living room of the home of Charles M. Nes, Jr., in Baltimore County, and to restain the surface, as a part of certain repairs and improvements for which Harry A. Hudgins was the principal contractor. The removal of the stain and varnish from the woodwork involved the application of an inflammable paste, and the use of putty knives for scraping, and the wood was afterwards rubbed with steel wool and alcohol in order to clean it properly for restaining. Two employees of the defendant had been doing that work for two and a half days when, about noon on October 24th, 1934, the interior of the living room was badly damaged by a fire of

apparently sudden origin and brief duration. The defendant's employees were alone in the room when the fire started, and the only door affording access to the adjacent part of the house was closed. Before Mr. Nes left home on the morning of the fire he visited the living room and saw the painters proceeding with their work. He could not recall whether any of the doors or windows were open, but he said there was no fire in the room. When he returned "about twenty-five minutes after the fire started" it was no longer burning. He found the two painters "slightly burned and very scared."

The fire had spread over all of the walls, but the painting at one end of the room was "severely charred." In that part of the room was the door leading into the adjoining hallway. Near the door was one of several switches by which the current for the electric lights in the room was controlled. Each switch was operated by a button projecting from a metal box in the paneling. To facilitate the work of refinishing the wood surface, the plate covering the box near the door had been removed, but the switch and connecting wires remained in position. Electric wall fixtures, with the bulbs taken from them, had been unscrewed and left hanging by the wires, which were "taped." No protective covering appears to have been provided for the wires in the switch box. In the pantry on the first floor was a fuse box for the control of the electric current throughout the house, and before the work was begun Mr. Nes informed the defendant's son and representative that one of the fuses could be removed as a means of cutting off the current from the living room while the work was in progress. That precaution, however, appears to have been omitted. It was testified that there was "a 'great deal of fire around" the uncovered switch box near the door in the living room, that the "woodwork around the box after the fire was black and charred," and that "the wires at the box were burned." Other electric switches in the room were "burned and bent."

The paste used for the removal of the old stain and

varnish was supplied in cans on which were labels with printed directions as to its use, and in large print the caution "Inflammable. Keep away from fire and use in a well ventilated place."

The declaration alleged that the defendant's employees negligently failed to keep the room in which they were working properly ventilated, and as a result dangerous quantities of inflammable gases, fumes, and vapors accumulated in the room, and, while removing the stain and varnish from the paneling at or about the uncovered switch box, from which the defendant had neglected and failed to cut off the electric current, one of the employees negligently formed a contact with the switch or connecting wires, and thus produced a spark by which the inflammable vapors in the room were ignited.

One of the men employed in the room at the time of the fire had died before the trial, and the other was not called as a witness, the issue, as already noted, having been withdrawn from the jury at the close of the plaintiff's case. The decision of the question as to the legal sufficiency of the evidence produced to support the plaintiff's theory must, therefore, depend upon a consideration of the inferences of which that evidence may reasonably admit, there being no direct proof as to how the fire originated.

It is readily inferable that the fire resulted from the ignition of the inflammable material used by the defendant's employees, or of the vapors produced by its application and removal. The testimony does not prove to what extent provision had been made before the fire for the ventilation of the room in order to permit the ignitible fumes to escape. In addition to the door between the living room and hallway there were three French doors, a window, and an ordinary door, all opening on verandas, and there was an eighteen inch flue in the chimney above an open fireplace. As the outer wall above the French door opposite the entrance from the hallway was much discolored by smoke, while only slight exterior indications of smoke appeared above the

other doors and the window adjacent to the verandas, there may be some ground for the suggested inference that only the first of those five available means of ventilating the room had been fully utilized. But if the evidence as to such comparative indications be regarded as having a legally insufficient tendency to prove that there was a failure to ventilate the room properly, it is nevertheless a fact that the fire resulted from the use of instrumentalities which were within the exclusive control of the defendant's employees, and which were applied under conditions requiring special precautions to obviate such a hazard.

In *Singer Transfer Co. v. Buck Glass Co.*, 169 Md. 358, 362, 181 A. 672, 673, it was said in the court's opinion, as delivered by Judge Offutt, that: "Where damage to property is caused by the operation of some instrumentality within the exclusive control of the defendant under circumstances which justify the inference that it would not have occurred had the defendant exercised ordinary care, negligence may be presumed as a rational inference from those facts. 45 *C. J.*, 1193; *Goldman & Freiman Bottling Co. v. Sindell*, 140 Md. 488, 117 A. 866; *Chesapeake Iron Works v. Hochschild, Kohn & Co.*, 119 Md. 303, 86 A. 345; *Decola v. Cowan*, 102 Md. 551, 62 A. 1026; *Winkelmann & Brown Drug Co. v. Colladay*, 88 Md. 78, 40 A. 1078; *Benedick v. Potts*, 88 Md. 52, 40 A. 1067; *Howser v. Cumberland etc. R. Co.*, 80 Md. 146, 30 A. 906; *State, use of Thompson v. Emerson & Morgan Coal Co.*, 150 Md. 429, 448, 133 A. 601; *Clough & Molloy v. Shilling*, 149 Md. 189, 131 A. 343."

The decision in *Potomac Edison Co. v. Johnson*, 160 Md. 33, 36, 152 A. 633, 634, applied, in the opinion by Judge Adkins, the principle that, where an accident is "one that would not ordinarily have happened if due care and caution had been used," the defendant has "the burden or duty of explanation," "not satisfactorily to account for the occurrence and to show the actual cause of the injury, but merely to rebut the inference that it had failed to use due care." The effect of that decision, as

further explained by the court, was not that the burden of proof was on the defendant, "but only that the duty was cast upon it to go forward with the evidence, and it was for the jury to say whether it had met that obligation." The burden of proof upon the issue of negligence remains upon the plaintiff throughout the trial. *Globe Indemnity Co. v. Reinhart*, 152 Md. 439, 137 A. 43. In the last-cited case the opinion by Judge Digges (at page 458 of 152 Md., 137 A. 43), supported one of the rulings by the following quotation from *Whitlatch v. Fid. & Cas. Co.*, 149 N. Y. 45, 43 N. E. 405, as there quoted from *Farmers' Loan & Trust Co. v. Siefke*, 144 N. Y. 354, 39 N. E. 358: "There is confusion sometimes in treating of the burden of proof, arising out of unexact definitions. The burden is upon a plaintiff to establish his cause of action when it is in proper form denied by the other party. * * * It is very common to say in such cases that the burden is upon the defendant to establish the fact relied upon. All that this can properly mean is that when the plaintiff has established a *prima facie* case, the defendant is bound to controvert it by evidence, otherwise he will be cast in judgment. When such evidence is given and the case upon the whole evidence, that for and that against the fact asserted by the plaintiff, is submitted to court or jury, then the question of the burden of proof as to any fact, in its proper sense, arises and rests upon the party upon whom it was at the outset, and is not shifted by the course of the trial, and the jury may be properly instructed that all material issues tendered by the plaintiff must be established by him by a preponderance of evidence."

The principles applied in the above cited cases are appropriate to the case presented by this record. The defendant's employees were the only persons in a position to know how the fire originated, or at least to describe the conditions in the room, and their operations at the time, as reflecting upon the question as to whether they were exercising the specially requisite care to prevent such an accident. If it be conceded that the testimony offered by the plaintiff was not legally sufficient to prove

the specific allegations of negligence in the declaration, it is our duty to consider the general effect of the evidence upon the issue of negligence, since the prayer to withdraw the case from the jury made no reference to the pleadings. *Weiss v. Dredge & Dock Co.*, 155 Md. 351, 142 A. 253. In our judgment the facts proved by the plaintiff made it the duty of the defendant to "go forward with the evidence."

It was testified by Mr. Nes that he and Mrs. Nes entered the living room the night before the fire and that he thought his wife turned on the switch near the door, but whether she turned it off he was unable to remember. There is a suggestion that, if the switch was not turned off, the connecting wire may have become so heated as to cause a short circuit, to which the fire might be attributed. This theory is not supported by any evidence in the case. The fire occurred many hours after Mrs. Nes visited the room with her husband, and, if she then changed the position of the switch button, there is no indication in the record that such a customary movement would overheat the wires and create a danger of fire during the course of the work on the following day. But at all events that hypothesis could only be considered with due regard to evidence tending to prove that any danger of fire which might be supposed to result from an inadvertent shift of the switch would have been avoided if the current for that room had been cut off at the fuse box, as suggested to the defendant's representative by the owner of the building.

This opinion has referred to John D. Beckley as if he were the only defendant, because his two sons, who were made codefendants in the suit, appear from the testimony not to have been associated with him as partners, but to have been his employees in the painting business of which he is the sole proprietor. The reversal of the judgment will apply only to him individually.

> *Judgment reversed, with costs, as to John D. Beckley, and case remanded for a new trial.*