## SHIRKS MOTOR EXPRESS *v.* OXENHAM
[No. 177, October Term, 1953.]

628

Decided June 22, 1954.

*Motion for rehearing filed July 1, 1954, denied July 21, 1954.*

The cause was argued before BRUNE, C. J., and COL-LINS, HENDERSON and HAMMOND, JJ.

*Charles J. Stinchcomb* and *John R. Royster,* with whom were *George E. Kieffner* and *Kieffner, Stinchcomb & Royster* on the brief, for the appellant.

*David K. Ebersole, Jr.,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

A tractor-trailer driving along a City street, veered to the right and struck three cars parked at the curb, when its driver suddenly became ill either just before or just after the impact. The appellee, the owner of one of the cars, sued the appellant, the owner of the tractor-trailer, and recovered judgment on the verdict of a jury. This appeal challenges the action of the trial court in denying a motion for a directed verdict and a motion for a judgment notwithstanding the verdict, and also, the court's refusal to admit in evidence parts of hospital records and a statement made to the police.

The plaintiff below produced testimony that the tractor-trailer, owned by the defendant, ran into his parked automobile, and rested. The defendant asked for a directed verdict which the court refused, holding that the evidence permitted an inference of negligence on the

part of its driver, sufficient to constitute an effective part of the plaintiff's burden of proof. The defendant then accepted the duty of going forward with the evidence and offered testimony by the helper on the truck that as the vehicle was coming down Franklintown Road, he noticed it: ". . . kind of running to the right . . ." and told the driver so. Then, as he looked at the driver, he saw that he was: ". . . hugged over the steering wheel, kind of leaned over or stretched out, he wasn't in no driving position at all", and that: "His eyes was kind of green and kind of foaming at the mouth like, and he didn't look right. . ." The witness said that the accident happened immediately afterwards, that then he got out to see the damage and as the truck commenced to drift back, he chocked a rear wheel. He went back to the cab and the driver fell and again commenced foaming at the mouth. The driver was taken to a hospital in an ambulance and died some hours later of the occulsion of a carotid artery. The helper had driven with the driver for several years but had never known him to be sick. The manager of the appellant said that the driver had performed his work regularly, had never shown signs, or complained, of illness, and had passed four physical examinations, required by the Interstate Commerce Commission, since 1946. The appellant then offered hospital records as to the driver which had been produced by the Lutheran Hospital. The court allowed in evidence the words: "Convulsion while driving—hit a parked car. Continued convulsing." The court refused, over objection, to admit a statement in the history given in the emergency ward, reading: "Driving trailer truck—had convulsion and then hit 3 parked cars, little damage to truck", and also ruled inadmissible part of the history chart of the hospital, which read: "Patient was driving truck in apparent good health today when he suddenly had convulsive seizure. Truck then hit three parked cars. Patient was removed from truck and continued to convulse until brought into AR 40 min. later."

The appellee, as plaintiff below, had produced as a witness a policeman who had come to investigate the accident. The appellant, as part of its case as defendant, offered in evidence a statement by the helper to this officer, in which he said he was riding on the truck with the driver: ". . . and all of a sudden he started to shake all over and then the trailer went over to the right side and struck a parked car and continued on and struck two more cars before we stopped. Baker was really shaking all over." The court refused to admit the statement in evidence.

The appellee, to rebut the appellant's efforts to show that the accident was a result of the sudden, unanticipated and incapacitating seizure of the driver, and so, unavoidable or an act of God, produced several witnesses who testified that after the accident, the driver of the truck was sitting up in the seat with both hands at the wheel, as a normal driver would sit. Another witness testified that he came out from the establishment in front of which the accident happened as soon as he heard the crash and that the helper was getting out of the truck as he came out of the building. At that time, this witness said the front wheels of the tractor were up on the appellant's car, and the helper went to the back of the truck, and standing on the right hand side, directed the truck driver to back off the car. When questioned as to how he did this, the witness said that the helper directed the driver: "By yelling, come back or hold it or turn the wheels." The witness further testified that the truck was "correctly" backed off the car which it struck. The witness said further that he saw the driver immediately after that and he was in the truck, sitting upright with his hands on the wheel. The witnesses all agree that shortly after the truck had been backed off and stopped, the driver was lying on the pavement shaking and frothing at the mouth and that the ambulance was then called.

It is not seriously contended here that the trial court was wrong in sending the case to the jury on the testi-

mony for the plaintiff, under the doctrine of *res ipsa loquitur*. It is urged that the explanation offered by the defendant below was exculpatory to the point of avoiding completely the effect of the doctrine, so that the motion for a directed verdict at the close of the whole case should have been granted. We think the facts produced by the plaintiff were sufficient to permit an inference of negligence on the part of the driver of the tractor-trailer and that the motion was properly denied. As was said in explaining the doctrine, in *Lee v. Housing Authority of Baltimore City*, 203 Md. 453, 462: "An inference of negligence cannot be drawn unless 'the thing which produced the injury was under the management and control of the defendant' and the 'surrounding circumstances tend to show that the injury was the result of some condition or act which ordinarily does not happen if those who have the control or management thereof exercise proper care.' . . . The element of control has an important bearing as negativing the hypothesis of an intervening cause beyond the defendant's control, and also as tending to show affirmatively that the cause was one within the power of the defendant to prevent by the exercise of care."

Here the tractor-trailer admittedly was under the exclusive control of the defendant, and a vehicle moving down the street ordinarily does not hit a parked car if proper care is exercised. This Court has held that the doctrine may be applicable in the case of a motor vehicle. *American Express Co. v. Terry*, 126 Md. 254, 261. There a car which had been parked unattended started down grade. There was precluded the possibility that an intervening act had caused the machine to start and the Court held that the evidence was sufficient to permit an inference of negligence: ". . . which the defendant was bound to rebut or overcome." See also *Singer Transfer Co. v. Buck Glass Co.*, 169 Md. 358; and *Hickory Transfer Co. v. Nezbed*, 202 Md. 253. A number of courts have held that a moving vehicle which hits a parked vehicle

may be within the doctrine. *Hardman v. Younkers* (Wash.) 131 P. 2d 177; *Byrne v. Great Atlantic and Pacific Tea Co.* (Mass.), 168 N. E. 540; *Huddy Automobile Law* (9th Ed.) Vol. 15-16, p. 281; and *Berry Law of Automobiles* (7th Ed.) Vol. 3, p. 168.

It may well be that a defendant can avoid the impact of the doctrine of *res ipsa loquitur* if his evidence goes beyond mere contradiction or the assertion of every precaution taken. This Court has held that if the plaintiff's testimony shows an exculpatory cause, the inference may not be drawn. *Hickory Transfer Co. v. Nezbed, supra; Lee v. Housing Authority of Baltimore City, supra; Klan v. Security Motors,* 164 Md. 198, 200; *Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 444; *Strasburger v. Vogel,* 103 Md. 85. It divided in two cases on the question as to whether the particular circumstances sufficiently excluded the probability of exculpatory cause as revealed by the testimony of both the plaintiff and the defendant. *Potomac Edison Co. v. Johnson,* 160 Md. 33; *Cloverland Farms Dairy v. Ellin,* 195 Md. 663. In *Tittlebaum v. Pennsylvania R. R. Co.,* 167 Md. 397, a passenger on a train was injured by glass from a window which suddenly broke across the aisle from her. The defendant produced evidence that a boy had thrown a stone at the train. The doctrine of *res ipsa loquitur* was held inapplicable, on the ground that if the evidence discloses that the injury may have been caused either by the defendant's negligence or by the act of another, for which the defendant was not responsible, the doctrine does not apply. In *Frenkil v. Johnson,* 175 Md. 592, there was a full discussion of *res ipsa loquitur,* and it was said that the doctrine does not apply if the injury be inflicted by an act of God or *vis major* or is the result of inevitable accident, as defined or contemplated by law.

The appellant, in support of its position that the doctrine in this case should be subject to the qualification referred to in the *Frenkil* case, cites cases in other juris-

dictions, including *Cohen v. Petty* (D. C., Ct. of Appeals) 65 F. 2d 820, in which Judge Groner said for the Court: "It is undoubtedly the law that one who is suddenly stricken by an illness which he had no reason to anticipate, while driving an automobile, which renders it impossible for him to control the car, is not chargeable with negligence." *Weldon Tool Co. v. Kelly*, (Ohio) 76 N. E. 2d 629; *Beiner v. Nassau Electric R. Co.*, 181 N. Y. S. 628; *Armstrong v. Cook* (Mich.) 229 N. W. 433; see also Note 28 A. L. R. 2d 35.

We assume, without deciding, that if, without contradiction or effective challenge, there had been shown that the driver's sudden illness preceded the accident, the verdict should have been directed for the appellant. That is not this case. Here, there is a very effective challenge to the appellant's position as to the time of the onset of the unexpected illness. The evidence permits a difference of opinion in the minds of reasonable men as to whether the illness preceded or followed the striking of the parked car. The testimony that the helper left his friend and fellow worker immediately after the crash to inspect the damage and chock the trailer, could reasonably be found to make his testimony that the seizure occurred before that time incredible. The explicit evidence of of the appellee's witnesses, in rebuttal, that the tractor-trailer was backed by the driver, under the direction of the helper, after the accident, also would permit the jury to find that the illness followed the accident, rather than preceded it. Cases, in situations where there is conflict as to the time of the sudden physical disability of the driver, have said that the matter is one for the determination of the jury. One is *Lagasse v. Laporte* (N. H.) 58 A. 2d 312, where the court distinguished *Cohen v. Petty, supra,* saying that there the sudden unconsciousness was uncontradicted or undisputed, while the evidence before it warranted an inference that the defendant was conscious at a time when he should have acted other than as he did. See

also *Meyers v. Tri-State Auto Co.* (Minn.) 140 N. W. 184; *Waters v. Pacific Coast Dairying, Inc.* (Calif.) 131 P. 2d 588; and *Barber v. Howard Sober, Inc.*, 58 N. Y. S. 2d 465.

In the case before us, the inference of negligence permissibly to be drawn from the facts of the accident was sought to be dispelled by the defendant's explanation and the validity of that effort was challenged by the rebuttal testimony of the plaintiff. Reasonable minds could draw different inferences from all the testimony presented. As was said in *Potts v. Armour & Co.*, 183 Md. 483: "If the trial court finds that conflicting inferences may be drawn, choice of inference must be made by the jury" and we think that this is one of the cases where that must be so and that the trial court was correct in refusing to direct a verdict or to grant the motion N. O. V.

Nevertheless, we think that the judgment must be reversed and the case remanded for a new trial because of the refusal of the court to admit all of the hospital records. The case turns entirely on the narrow issue as to the exact time the driver of the tractor-trailer became incapacitated by the seizure. The excluded portions of the hospital record were, in the language adopted in *Lee v. Housing Authority of Baltimore City, supra,* pathologically germane to the physical condition which caused the patient to be brought to the hospital for treatment, in that they referred to apparent good health and to sudden convulsions which followed, as well as to the fact that the patient, after being removed from the truck, continued to convulse until brought into the accident room. The appellee complains that the reference in the statement about hitting three parked cars was inadmissible. We think not. In the *Lee* case, the hospital records, which, it was held should have been admitted under the provision of Code (1951), Article 35, Sec. 68, included the recital that the patient was brought in: ". . . after being burned when a gas stove exploded near her", as well as a reference to the

cause of the injury which was: ". . . following the explosion of a gasoline water heater in a confined area." Judge Henderson said for the Court: "In the instant case we think the record of the alleged cause of the burns to be treated was a proper part of the medical history. The entries do not undertake to establish the cause of the explosion, but merely relate to the nature of the substance causing the burns, gas, and the character of the combustion, an explosion. It is certainly customary and proper to record the type of accident causing the injury, and this information may have an important bearing upon the diagnosis, as indicating what the doctors should look for, and upon the treatment to be applied. We think the information recorded, from whatever source obtained, was not outside the regular course of professional inquiry." The language quoted is fully applicable to the records now in question. That the lapse from normal behavior lasted long enough to encompass the striking of three cars might well have medical significance as part of the history of the patient to be weighed in the diagnosis with the observed condition and symptoms. We think the exclusion of the reports was prejudical error.

Since the case must be remanded for a new trial, it is appropriate to say that the statement which was made by the helper on the truck to the police officer was, in our opinion, admissible as part of the *res gestae*. The testimony shows that it was given within seven or eight minutes, certainly not more than ten, after the accident happened. One of the witnesses for the appellee testified that he came from the establishment in front of which the crash occurred as soon as he heard it and that, after observing the driver sitting at the wheel, he went straight in and called the police. The police say that they received the call at 3:11 P.M., were at the scene of the accident at 3:16 P.M., and immediately took the statement from the helper. We think that his responses were made under the "immediate spur" of the occurrence

of which it was a part, and was not part of a narrative of a completed event. *Singer Transfer Co. v. Buck Glass Co., supra,* 169 Md. at 363. If the statement was admissible, as we hold it was, as part of the *res gestae,* it matters not that it was self-serving as to the appellant. *Evans v. Buchanan,* 183 Md. 463. Cf. *Montgomery Bus Lines v. Diehl,* 158 Md. 233.

*Judgment reversed, with costs, and case remanded for a new trial.*