## MUNZERT *v.* AMERICAN STORES COMPANY

[No. 257, September Term, 1962.]

98

*Decided June 26, 1963.*

The cause was first argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ., and re-argued before the full Court.

*Joseph I. Pines* and *William O. Goldstein* (each on both arguments), with whom were *Israelson & Pines* on the brief, for the appellant.

*David M. Buffington* (on both arguments) and *Eugene A. Edgett, Jr.* (on the first argument) for the appellee.

HORNEY, J., delivered the opinion of the Court.

When the empty soft drink cases stacked on a hand truck or dolly in a food market fell and struck a customer on the side of her head and other parts of her body and injured her, this tort action was brought by Betty Munzert (plaintiff or appellant) against the American Stores Company (defendant or appellee) to recover damages for personal injuries allegedly received as a result of the accident.

The trial of the case before a jury resulted in a verdict for the defendant and the entry of a judgment for costs against the

plaintiff. This appeal followed. On appeal, it is contended that the trial court erred (i) in refusing to direct a verdict for the plaintiff as to the negligence of the defendant and (ii) in refusing to instruct the jury as to the absence of negligence on the part of the plaintiff.

The dolly was used around the store to transport objects from one part of the premises to another. It was three and one-half feet long and was equipped with four trundle wheels but did not have brakes. The two wheels in front were fixed and the two in back were swivelled. A railing or handle was affixed to the base of the dolly above the rear wheels. The flat bottomed base was six inches from the floor and the handle was three feet high.

On a Saturday morning in January of 1959 a clerk in the employ of the defendant stacked empty wooden cases on the dolly inside the store to a height of five or six feet and pulled it, while walking backward with one hand resting on the cases to steady them, out of the store to the front sidewalk. He left the loaded dolly standing unchocked and unattended against the storeside of a lolly-column or pole supporting the canopy over the sidewalk while he returned to the store. According to the clerk, he had properly stacked the cases on the dolly. However, when he returned some five minutes later to unload the cases and to set them up to receive empty soft drink bottles returned by customers, he found eight or nine of the cases lying on the sidewalk along side of the plaintiff's automobile, which, according to the clerk, was parked with its right rear wheel adjacent to the dolly.

The plaintiff drove to the shopping center in which the store was located and left her automobile on the nearby parking strip and entered the store to do her marketing. After checking out she pushed the market cart she was using out of the store and left it temporarily on the sidewalk near the front door. As she came out of the door, she saw the clerk moving the dolly in front of the store but paid no particular attention to him. The plaintiff got into her automobile and drove it to the loading center and, according to her, she parked the vehicle with its right side against the curb "about five feet" ahead of the dolly. After she had parked, she pushed the market cart up

to the automobile so as to put the cart between herself and the dolly. As she stood facing the dolly and was about to transfer the contents of the cart to her automobile, the cases toppled toward her and struck her as they fell. She said that she had not struck the cases with her automobile as she came into the curb to park and, according to her testimony, she had not come into contact with the dolly or cases personally or with the cart as she was maneuvering into a position beside the automobile.

According to the plaintiff, no one other than herself and the clerk had been in the vicinity of the place where the case-loaded dolly was standing at the time of the accident.

At the close of the evidence, the trial court instructed the jury substantially as follows:

> That there was no evidence to show how the accident happened.
>
> That there was evidence that the clerk had brought the cases out of the store and had gone away and left the dolly standing against a pole and that while the customer was putting the groceries in the automobile the cases fell and struck her; that the jury could believe or disbelieve that the customer had not struck the cases with her automobile or the market cart or it could believe or disbelieve that the clerk had stacked the cases properly; that if the jury found that the customer had not struck the cases, then it could infer that the cases had not been put on the dolly as they should have been; and
>
> That the plaintiff had the burden of showing that the cases had been negligently stacked and that she had not knocked them over; and that if and when this was shown, then it was the duty of the defendant to go forward with the evidence and explain how the cases were knocked over or why they fell down or otherwise show that the defendant was not liable.

The court then told the jury that if the defendant ran her automobile into the cases, or if, while getting out of the automobile she did not look, or saw that they were there and ran

into them herself, then she would be guilty of contributory negligence, but added that there was no testimony to that effect. After it had instructed the jury as to the measure of damages and that it had a duty to distinguish between the damages that had been caused by a previous automobile accident and the damages that had been caused by the store accident, the court reiterated that the basic problem was whether the store accident had been caused by negligence "in piling the boxes" or by "something else."

(i)

The trial court did not err when it refused to direct a verdict for the plaintiff as to the negligence of the defendant.

In a case such as this, where the evidence is such as to bring a case within the confines of that twilight zone in the law of evidence relating to the burden of proof and the sufficiency of the evidence commonly known as *res ipsa loquitur,* a permissible inference arises that the defendant was negligent. However, the burden of proof is not thereby shifted from the plaintiff to the defendant. In such circumstances, the defendant has the duty of going forward with the evidence to explain or rebut, if he can, the inference that he failed to use due care, but he does not have the burden of satisfactorily accounting for the accident and of showing the actual cause of the injury in order to preclude the granting of an instructed verdict against him. *Brehm v. Lorenz,* 206 Md. 500, 112 A. 2d 475 (1955); *Baltimore American Underwriters v. Beckley,* 173 Md. 202, 195 Atl. 550 (1937). See also Farinholt, *Res Ipsa Loquitur,* 10 Md. L. Rev. 337; Thomsen, *Res Ipsa Loquitur,* 3 Md. L. Rev. 285.

Since the doctrine of *res ipsa loquitur* means that the facts of the case warrant, but do not compel, an inference of negligence; that the facts furnish circumstantial evidence of negligence (where direct evidence of it is lacking) which is to be weighed, but is not necessarily to be accepted as sufficient; and that the facts call for explanation or rebuttal, but do not necessarily require either, the question of negligence is usually one of fact for the jury to decide and not one of law. See *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721

(1958) ; *Potts v. Armour & Co.,* 183 Md. 483, 39 A. 2d 552 (1944). See also *Shirks Motor Express v. Oxenham,* 204 Md. 626, 106 A. 2d 46 (1954), where it was said that if the trial court finds that conflicting inferences may be drawn, the choice of inference must be made by the jury.

In the case at bar, it seems clear that the plaintiff was not entitled to a directed verdict as to the primary negligence of the defendant even though no explanatory or rebuttal evidence (other than that of the clerk to the effect that he had stacked the cases properly) was produced by the defendant. On the other hand, it is apparent that the defendant, having failed to fully explain or rebut the permissible inference that it was negligent, was not entitled to a directed verdict in its favor. Cf. *Lee v. Housing Authority of Baltimore,* 203 Md. 453, 101 A. 2d 832 (1954).

The general rule is that a presumption of negligence on the part of the owner or lessee does not arise merely by showing that an injury has been sustained by a person rightfully on the premises. *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 67 A. 2d 251 (1949). But the rule has a limitation or qualification for in "lieu of direct proof of negligence [a plaintiff] may rely on the inference of negligence to be deduced from all the circumstances." *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 262, 96 A. 2d 241 (1953). This is, of course, the doctrine of *res ipsa loquitur* and its application is limited to those negligence cases in which the plaintiff proves that he has been injured "(a) by a casualty of a sort which usually does not occur in the absence of negligence, (b) by an instrumentality within the defendant's exclusive control, (c) under circumstances indicating that it was not caused by any involuntary act or neglect of the plaintiff". *Proctor Electric Co. v. Zink, supra,* at p. 29. See also *Williams v. McCrory Stores Corp.,* 203 Md. 598, 601, 102 A. 2d 253 (1954).

When these tests are applied in the instant case, it seems clear that the appellant brought herself within the requirements of the doctrine of *res ipsa loquitur.* There was sufficient evidence to permit an inference that the cases had been carelessly stacked on the dolly by the defendant. There was further evidence that the initial exclusive control of the dolly had not

been interrupted. And there was the testimony of the plaintiff that she had not caused the cases to topple over on her. On the other hand, other than the statement of the clerk that the cases had been properly stacked, there was no evidence to the contrary. We think therefore that the submission of the questions of negligence to the jury was correct, and that it would have been error had either of the negligence questions been withdrawn from the consideration of the jury.

While it would have been preferable for the trial court to have given the standard "invitee" instruction, we think the contention of the plaintiff that the court erred in not doing so in this case, is without substantial merit. Since the jury was instructed with respect to *res ipsa loquitur*, there was no need for any other instruction on the question of liability. Had the jury decided to accept the inference of negligence, it could have found for the plaintiff regardless of her status. There was no claim that she was a trespasser: on the contrary it was tacitly admitted that she had a right to be where she was.

### (ii)

The principal contention of the appellant is that the trial court erred when, instead of instructing the jury that there was no evidence of negligence on her part, it concluded its charge on the question of liability by stating that she could be guilty of contributory negligence if she ran into the case-loaded dolly herself or with her automobile or market cart.

The testimony of the plaintiff is positive that she did not strike the dolly or cases herself or with the automobile or market cart, and there was no testimony to the contrary. In addition to her testimony, a photograph shows that the plaintiff could not have struck the dolly or its load of cases with the automobile without driving it onto the sidewalk.

Although the plaintiff, in addition to presenting evidence which would support an inference of negligence on the part of the defendant—regardless of whether or not the defendant presents evidence to show that the plaintiff was contributorily negligent—she also had the burden of persuading the jury that she did not contribute to her own injury before she can recover damages. As is pointed out in 2 Harper and James, *The Law of*

*Torts,* § 19.8, the plaintiff must eliminate her own negligence and that of anyone else for whom the defendant is not responsible in order "to complete the basis for an inference that the negligence of which the thing speaks is probably that of the defendant." However, in the case at bar, it appears that the plaintiff adduced sufficient affirmative evidence to take this question to the jury.

Under these circumstances, if the defendant relied on contributory negligence arising from facts not shown in the plaintiff's evidence, the plaintiff was entitled to an instruction that if the jury draws the permissible inference of the defendant's negligence, she is entitled to a verdict in her favor, unless the jury determines that a preponderance of all the evidence (that offered by both the defendant and the plaintiff) shows that the plaintiff was contributorily negligent. *Potts v. Armour Co., supra,* at p. 489 of 183 Md. See also *Potomac Edison Co. v. State use of Hoffman,* 168 Md. 156, 177 Atl. 163 (1935). However, since there was no evidence of any contributory negligence on the part of the plaintiff, the instruction of the court to the effect that she could be guilty of contributory negligence was prejudicial error.

Apart from everything else, we think the wording of the charge to the jury was unfair to the plaintiff. Since it is apparent that it was physically impossible for the automobile to strike the case-loaded dolly without driving onto the sidewalk, the conclusion that it might have done so, when there was no evidence that it had, is enough to require a reversal and a remand of the case for a new trial.

> *Judgment reversed and case remanded for a new trial; appellee to pay the costs.*

HENDERSON, J., filed the following dissenting opinion, in which BRUNE, C. J., and SYBERT, J., concurred.

I agree with the holding of a majority of the Court that the facts in this case bring it within the scope of the so-called doctrine of *res ipsa loquitur.* The factual situation, involving a falling stack of goods on or about store premises, is one in

which the doctrine has been frequently applied. See the cases collected in Note 20 A.L.R. 2d 95. I also agree that, although the defendant's employee testified that the boxes were properly stacked, the jury was not compelled to believe him, and could properly have found that the fall was due to improper stacking. On the question of "exclusive control," I should also agree that the short interval of time, less than 5 minutes, during which the boxes were unattended and unobserved, after the employee entered the store and while the plaintiff was walking to her car and entering, starting and driving it past the boxes, meets the test, and effectively rules out any inference that the fall was caused by the interference of a third person. Cf. *Joffre v. Canada Dry, Inc.,* 222 Md. 1, 8 and *Nalee, Inc. v. Jacobs,* 228 Md. 525, 531. See also *Lee v. Housing Auth. of Baltimore,* 203 Md. 453 and *Walker v. Vail,* 203 Md. 321. There was no testimony that any third person was in the vicinity, or that any high wind was blowing.

I think, however, that just as the jury could properly have found that the fall was caused by negligent stacking, so it could properly find, as it apparently did, that the fall was caused by the interference of the plaintiff herself, despite her testimony that she did not touch the stack. Ruling out the remote possibility of interference by a third person or an act of God, we have the undisputed fact that the boxes were well enough stacked to permit the dolly to be wheeled from the store and securely lodged against a metal upright, or lolly-pole, supporting the sidewalk awnings, where it was found undisturbed after the alleged accident, when one of the three stacks was found on the sidewalk. The plaintiff's testimony is that she had pushed her loaded grocery cart alongside her automobile, after she parked the automobile at the curb, and had her left hand on the cart handle and her right hand on the door handle when she was struck in the head and shoulder by a falling box or boxes. She testified that the cart was between her and the dolly, and that the dolly was "roughly" 5 feet behind the rear end of her automobile, or a distance of about 14 feet from the door handle. Since the evidence was that the top of the boxes on the dolly was 5 feet 6 inches from the ground (Mrs. Munzert testified that it was about a foot higher)

and she was admittedly 5 feet 4 inches tall, it is almost inconceivable that a box falling off the top of the stack could strike her in the head. It would seem that it would necessarily land 6 or 7 feet from where she was standing, and not even strike the cart.

The testimony of the employee was, however, that when he came out of the store the rear end of the automobile was alongside the dolly. This would doubtless bring the plaintiff within range of the falling boxes. It would also bring the cart within range of the dolly. Since the boxes obviously had enough initial stability to remain in position while pushed on the dolly, by far the most probable explanation is that the plaintiff, carelessly and perhaps unknowingly, pushed her cart with her left hand as she reached for the car door with her right, and struck the dolly or lower tier of boxes with sufficient force to dislodge the top ones in the only stack that fell. At least it is perfectly clear to me that the jury was entitled to consider that as a hypothesis of what happened equally as probable as the hypothesis that the fall was due solely to the improper stacking of the boxes and the force of gravity.

The fact that the plaintiff testified that she did not touch the boxes is not controlling. Of course, if she had admitted striking them, or had otherwise explained the cause of the fall, she would have put herself outside the scope of the doctrine. *Nalee v. Jacobs, supra* (p. 532), and cases cited. Under the third test laid down in *Williams v. McCrory Stores Corp.*, 203 Md. 598, 601 (adopted from Wigmore), the injurious occurrence must have happened irrespective of any voluntary action at the time by the party injured. Prosser, *Torts* (2d ed.), p. 201, states the third test in somewhat different terms: "[I]t must not have been due to any voluntary action or contribution on the part of the plaintiff." At p. 208 he states: "Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident. Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible." As stated in 2 Harper & James, *The Law of Torts*, § 19.8: "What is needed here is that the plaintiff's own negligence, along with that of anyone else for whom defendant is not responsible, be

eliminated so as to complete the basis for an inference that the negligence of which the thing speaks is probably that of defendant." But the jury is no more compelled to draw the one inference than the other.

It is well settled that *"res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference." *Potts v. Armour & Co.,* 183 Md. 483, 487. In the same case it was said (p. 488) : "The accident must have happened irrespective of any voluntary action at the time by the party injured. (citing cases) Otherwise, a person claiming to have been injured as the result of negligence could invoke the rule and use the fact of the happening of the accident as evidence of negligence, even though the jury considers his story incredible." The accepted rule that the inference is permissible but not mandatory in this type of case would be distorted or destroyed if the jury were instructed that they could not find that the plaintiff's action was a contributing cause under circumstances like those in the case at bar.

Even in a case where the doctrine of *res ipsa loquitur* is not applied *eo nomine,* but recovery rests largely on inference, the fact that the jury may properly disbelieve a plaintiff's testimony may, in some circumstances, prevent a directed verdict for the plaintiff, particularly where such testimony is controverted or impeached. See *Antonelli v. Pugh,* 231 Md. 194, 198 and cases cited. See also *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571 and *Proctor Electric Co. v. Zink,* 217 Md. 22, 33. It may be noted that in the instant case there was a sharp conflict in the medical testimony as to whether the plaintiff sustained any injury at all in the accident sued on, there was evidence of injury in a prior accident, and a history of neurotic behavior.

The opinion of a majority of the Court seems to concede that it was not reversible error for the trial court to omit the stock instruction as to the duty owed to a business invitee. The only other question preserved below or presented in the briefs is the failure of the trial court to instruct as to the burden of proof of contributory negligence. Under Rule 554 e there is nothing else before us. It may be true that there is a valid distinction between the normal situation in which the

burden of proving contributory negligence rests upon the defendant, and the third test of *res ipsa loquitur,* already discussed, which requires a plaintiff to negative his own participation, where he is in a position of possible control over the occurrence. For a discussion of the distinction see *Rollins v. Los Angeles,* 26 Cal. Rptr. 162, 166, a very recent decision of an intermediate appellate court in California, closely analogous on the facts. *Res ipsa loquitur,* whether regarded as a presumption or inference (the later cases and writers favor the inference theory), is an exception to the general rule that the mere happening of an accident raises no presumption of negligence. Cf. *Wasserman v. Hutzler Co.,* 219 Md. 310. To obtain the benefit of the doctrine the plaintiff must assume the burden of negativing the inference of any intervening cause, including his own participation, whether negligent or not. Under the circumstances of the instant case I think it would have been misleading and confusing to the jury to give the stock instruction as to the burden of proof of contributory negligence, in a charge that was obviously based on the doctrine of *res ipsa loquitur,* since the true cause of the accident was never explained.

The trial court was clearly authorized by Rule 554 to refuse all prayers and charge the jury in non-technical language. Cf. *Ager v. Balto. Transit Co.,* 213 Md. 414, 425, *Arundel Corp. v. Jasper,* 219 Md. 519, 529, and *Nance v. Kalkman,* 223 Md. 564, 569. In summing up, the trial court put the question in a nutshell: "In this case there are two basic problems, one, was the store liable for the boxes falling, was it negligent in piling the boxes the way it did and did that cause the accident or something else cause it * * *." (The second problem as to damages is not here relevant.) At an earlier point in the charge the court had explained that the jury might infer, but were not required to do so, that the boxes fell because they were negligently piled, but that if Mrs. Munzert caused the stack to fall by striking it with her car, cart or person, she would be guilty of contributory negligence, although there was no testimony that she struck the stack. In substance, I think this was no more than stating, in simple terms understandable to laymen, the essence of the third test of *res ipsa loquitur.* If any act of the plaintiff caused her injury in the instant case,

it would be precisely the same kind of act that would constitute contributory negligence in the ordinary case. To call such an act contributory negligence does not change its nature, nor does the use of the term add to the burden which the plaintiff has to meet in a *res ipsa* case of excluding his or her conduct as a contributing cause of the accident. If the trial court's use of the words "contributory negligence" may fairly be said to be an oversimplification, I find no reversible error.

I am authorized to say that Chief Judge Brune and Judge Sybert agree with the views here expressed.