MERVIN L. BLADES & SON, INC. *v.* LIGHTHOUSE SOUND MARINA AND COUNTRY CLUB ET AL.

[No. 1096, September Term, 1976.]

*Decided September 13, 1977.*

266

The cause was argued before MOYLAN, POWERS and MOORE, JJ.

*Daniel M. Long,* with whom was *Henry P. Walters* on the brief, for appellant.

*Raymond S. Smethurst, Jr.,* with whom were *Sally D. Adkins* and *Adkins, Potts & Smethurst* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Mechanics' liens in Maryland were transformed into little more than debt claims when the Court of Appeals, following several due process rulings of the United States Supreme Court, decided *Barry Properties v. Fick Bros.,* 277 Md. 15, 353 A. 2d 222, on 10 February 1976. The Court prefaced its discussion of the issue raised in that case with this explanation, at 19:

> "The basis of the present attack — that the imposition of a lien without notice and an opportunity for a prior hearing, as the Maryland statute authorizes, deprives the owner of his property without procedural due process — emanates from a quartet of recent Supreme Court decisions which address the question of whether certain statutory prejudgment creditor remedies are consonant with the due process clause of the Fourteenth Amendment. In the order they were decided, those cases are: *Sniadach v. Family Finance Corp.,* 395 U. S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages); *Fuentes v. Shevin,* 407 U. S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin of personalty); *Mitchell v. W. T. Grant Co.,* 416 U. S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration of personalty pursuant to

vendor's lien); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U. S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment of bank account)."

After a thorough and exhaustive analysis of the constitutional principles expressed in the cited opinions of the Supreme Court, and of the Maryland statute, the Court said, at 33:

"We conclude, therefore, that, because it allows prejudgment seizures without notice, a prior hearing or other sufficient safeguards, and cannot be justified under the extraordinary circumstances exception, Maryland's mechanics' lien law is incompatible with the due process clauses of Article 23 and the Fourteenth Amendment." [1]

The mechanics' lien laws of Maryland, as they existed before the decision in *Barry Properties,* were found in Code, Real Property Article, Title 9, Subtitle 1, and were codified as §§ 9-101 to 9-111. Procedural implementation of the statutory law was found in the BG Rules.

Briefly summarized, the law, the numerous interpretive decisions, and the BG Rules, provided that a lien attached to a building and to the land covered by it, and as much immediately adjacent land of the same owner as may be necessary for the ordinary and useful purposes of the building, for work done and for materials furnished for or about the building. The lien attached at the time the work was done or the materials were furnished, and had priority over any mortgage, judgment, lien, or encumbrance attaching to the building or ground subsequent to the commencement of the building. All valid mechanics' liens on any building and ground shared equal priority. §§ 9-101, 9-102.

---

1. In Landover Assoc. v. Fabricated Steel, 35 Md. App. 673, 371 A. 2d 1140 (1977), Judge Lowe, for this Court, discussed, at 674-80, the effect of the *Barry Properties* decision on the facts of that case.

To preserve his lien, a claimant was required to file a claim or statement of his demand in the office of the clerk of the circuit court before the expiration of 180 days [2] after the work was finished or the materials furnished. What the claim was required to set forth was specified in § 9-105 (c).

The final step, and the first judicial step, followed as prescribed in § 9-106. Unless within one year after the claim was filed, the claimant brought an equity suit to enforce it, the lien expired. If a suit to enforce the lien was timely filed, the lien remained until the case was concluded. The owner of the property, or other person interested, could at any time file an equity suit to compel the claimant to prove the validity of the lien. A claimant's suit to enforce his lien invoked the special statutory *in rem* jurisdiction of the equity court. Trial of such a suit could involve one or more of several issues, such as whether proper notice of intent to claim the lien was given, if required by § 9-103; whether the lien was preserved beyond its original life of 180 days by the timely filing of a claim; whether the claim as filed satisfied the requirements of § 9-105 (c); or whether the claimant is entitled to the full amount claimed. A finding of a valid lien in any amount normally resulted either in payment, so as to discharge the lien, or in a decree for sale of the property to satisfy the lien. Rule BG73.

It should be noted that the entire proceeding, from the creation of the lien to its discharge, was *in rem*, and even a final judgment after trial did not result in an *in personam* money judgment against any party. Indeed, § 9-109 explicitly preserved "the right of any person, to whom any debt is due for work done or material furnished, to maintain any personal action against the owner of the building or any other person liable for the debt."

Having held in *Barry Properties* that Maryland's mechanics' lien law violated due process, the Court of Appeals looked for severable salvage, to "preserv[e] enough

---

**2.** If the work was done or the materials were furnished under a contract with any person other than the owner of the land or his agent, an earlier notice of intention to claim a lien was required by §§ 9-103 and 9-104.

to have a law capable of fulfilling the principal legislative intent." At 36-37. The Court said, at 37:

"We think that this can be accomplished by excising that portion of the statute which purports to create a lien from the time work is performed or materials furnished to the time a lien is established by judicial determination in a proceeding sufficient with respect to due process. We therefore hold that under the current statute there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (i.e., a declaratory judgment action). What the claimant, be he a general contractor or subcontractor, possesses up to that point in time is a chose in action. Under this ruling, we believe, the statute continues to effectuate the primary legislative intent, yet the owner is not deprived of a significant property interest without due process since the owner's interest is not impinged upon until after he is provided with notice and an opportunity for a hearing. It follows that § 9-107 (b), to the extent that it grants mechanics' liens 'priority over any mortgage, judgment, lien or encumbrance attaching to the building or ground subsequent to the commencement of the building' but prior to the time the lien is established by a judicial determination, is also null and void since to hold otherwise would permit contractors to seize with their left hand what we have said they cannot grasp with their right."

It will be seen that the very valuable right which was preserved was the right of a creditor for labor or materials to proceed *in rem* against improved property even though he could show no privity of contract with the owner, nor personal liability of the owner to him.

It will be seen also that the lien concept in the law is otherwise virtually swept away. The claimant has no lien

until he has gone to court and has prevailed in what would be, in essence, a debt suit at law, without a jury. Even then he achieves no priority over any existing mortgage, judgment, lien, or other encumbrance. He may or may not share pro rata with holders of other mechanics' liens, already established.[3]

Any claimant who is able to show personal liability of the owner to him may well prefer to obtain an *in personam* money judgment in a suit at law. The judgment would be an immediate lien against all real estate of the owner, and would afford other means of collection as well. A potential mechanics' lien claimant who chooses to invoke the now curtailed benefits of the statute must still comply with the various procedural prerequisites, all within the specified time periods. *Barry Properties, supra,* at 37-38.

We have indulged in this extensive discussion of the mechanics' lien law, both before and after the Court of Appeals in *Barry Properties* pointed out its substantial unconstitutionality, because of our deep concern for the predicament in which the appellant in this case finds itself.

Mervin L. Blades & Sons, Inc., the appellant, on 23 December 1975, filed in the Circuit Court for Worcester County, in equity, an initial pleading entitled "Bill To Enforce Mechanics' Lien", naming as defendants Montego Bay Development Corporation, Wisterco Investments, Inc., and William R. Bloxom, all of whom it described as "owners or reputed owners, operating and commonly designated as Lighthouse Sound Marina and Country Club, now succeeded in interest by Lighthouse Sound Country Club, Inc." The complaint also named the latter corporation as a party defendant.

The ultimate disposition of the case in the Circuit Court for Worcester County was that the court, Daniel T. Prettyman, Judge, entered an order on 1 October 1976 sustaining an amended demurrer to the bill, without leave to

---

**3.** In *Barry Properties,* at 37, n. 13, the Court pointed out that the issue of constitutionality of § 9-107 (a), pertaining to priority among holders of mechanics' liens, was not before it, and was not decided.

amend. This constituted a final judgment, Maryland Rule 373 d., and from it Blades took this appeal.

Blades sought in its complaint to enforce a mechanics' lien claim in the amount if $672,809.56. It alleged that pursuant to a contract with Montego, Wisterco, and Bloxom, it had furnished materials and labor in connection with the construction of "a main core and tennis court building or buildings", as described in the contract, which was attached to and incorporated into the complaint as Exhibit A. For a legal description of the real estate on which the building or buildings were erected, the complaint referred to a deed, a copy of which was a part of its mechanics' lien claim. The complete lien claim, which the complaint alleged was filed in the office of the clerk of the circuit court on 23 December 1974,[4] was attached to and incorporated into the complaint as Exhibit B. The lien claim made no reference to a contract.

The complaint went on to allege that Blades had fully performed its obligations under the contract; that it furnished materials and performed work within 180 days of filing its lien claim; that no payment had been made; and that the amount due it was $672,809.56, with interest.

In response to the complaint filed by Blades, all defendants appeared by counsel and demurred, on the ground that the mechanics' lien laws unconstitutionally violated due process. While the demurrer was pending, the opinion in *Barry Properties* came down. All parties conceded that under that decision, Blades was entitled to proceed to "establish" its lien, the defendants then having notice and the opportunity to be heard. The demurrer was then overruled. All defendants filed an "Amended Demurrer",[5] attacking the complaint as insufficient because the lien claim, a part of and the foundation for the complaint, failed to meet the requirements of § 9-105.

---

4. The date alleged was an error. The lien claim was in fact filed on 20 December 1974. The correct date was before the lower court. There is no contention, however, that the equity proceeding filed on 23 December 1975 was not timely under § 9-106.

5. No question of the right of the defendants to demur again, on different grounds, has been raised.

The issue was submitted to the court on the pleadings, including a reply to the amended demurrer. As we have said, the court, on 1 October 1976, entered an order that the amended demurrer of the defendants be sustained, without leave to amend by the plaintiff. The order was appended to an Opinion, in which Judge Prettyman explained the reasons for his ruling. Pointing out that the change made by *Barry Properties* was that the lien, instead of attaching when the work was done or the materials furnished, did not attach until it had been "established" in an adversary judicial proceeding, the Opinion noted that the Court of Appeals, discussing the remedy still available, said, at 37-38:

> "We add, however, in case there be any doubt, that contractors, in order to obtain and enforce a lien, must still comply with the various procedural prerequisites — including, but not limited to, furnishing notice of intent to claim a lien if the claimant is a subcontractor, filing a claim, and instituting appropriate legal actions, all within the specified time periods."

We turn to the lien claim filed by Blades on 20 December 1974, to see whether it met the requirements of § 9-105 (c), which at that time said:

> "(c) *Contents of claim.* — Every claim shall set forth:
>
> (1) The names of the claimant, the owner or reputed owner of the building, and if the contract is made by the claimant with the contractor, architect, or builder, the name of the contractor, architect, or builder;
>
> (2) The amount or sum claimed to be due, the nature or kind of work or the kind and amount of materials furnished, and the time when the materials were furnished or the work done; and
>
> (3) The locality of the building, and a description adequate to identify the building."

The claim sufficiently set forth the names of the claimant and of the owners or reputed owners of the building. It also

set forth the amount or sum claimed to be due, and went on to assert that the claim was made

> "* * * for materials furnished, including but not limited to fill and grading materials, grading and hauling and services rendered, and all other improvements rendered at the instance of the said owners, or reputed owners, at the particular time and of the nature, kind and amount, and for the prices set forth in the bill of particulars annexed hereto and which materials have been furnished within less than six months before the filing of this claim."

One would naturally look to the annexed bill of particulars to determine the "nature or kind of work or the kind and amount of materials furnished", and "the time when the materials were furnished or the work done", as required by § 9-105 (c) (2).

Other than a copy of the owners' deed, the only thing annexed to the claim was a single sheet of paper, on the billhead of Mervin L. Blades & Son, Inc., billing Lighthouse Sound Country Club as follows:

| "September Requisition | Billed 9/27/74 | $ 224,700.00 |
|---|---|---|
| October Requisition | Billed 10/31/74 | 425,000.00 |
| Finance Charge on Sept. Balance | | 3,370.40 |
| Sub Total | Oct. Balance | 653,070.50(sic) |
| Finance Charge on October Balance | | 9,796.06 |
| Sub Total | Nov. Balance | 662,866.56 |
| Finance Charge on November Balance | | 9,943.00 |
| Total Due | Dec. Balance | 672,809.56" |

The annexed bill contains no suggestion of the nature or kind of work done. There is no itemization, not even a

generalization, of the kind and amount of materials furnished. The bill fails to state any time when materials were furnished or work done, although we may speculate that the September and October requisitions covered recent transactions.

For compliance with Subsection (c) (3) of § 9-105, one would also naturally look to the claim itself or to some annexed document for the locality of the building, and for a description adequate to identify the building. The claim is stated to be

"\* \* \* against all that construction of a building or buildings and all that ground therewith, filled, graded or paved, or otherwise covered by the said construction and so much other ground immediately adjacent thereto and belonging, in like manner, to the owners of such construction and filled, graded or paved ground, as may be necessary for the ordinary and useful purposes of said constructed building \* \* \*."

Nothing about any building is contained in any annexed document. The claim itself, by using the phrase, "a building or buildings", suggests that there might have been one building, or more than one, but it provides no answers. There is utterly no description of any building, from which anyone could undertake to identify a building. There is a suggestion that there could have been work involving filling, grading, or paving of ground, but if there was, there is no information relating such work to any building.

For locality of a building or buildings, the claim discloses only that it or they are located somewhere on 770 acres of land [6] described in the annexed deed. Since neither the owners nor the claimant have designated boundaries of a lesser area, § 9-102, Rule BG76, Blades presumably claims that the entire 770 acre tract is either covered by the buildings, or constitutes immediately adjacent land necessary for the ordinary and useful purposes of the

---

6. More than one square mile, and more than double the entire area of the Principality of Monaco.

buildings. As Judge Prettyman said in his Opinion, he could not go on this large acreage and determine what building or buildings had been constructed by Blades, much less order a sale to satisfy the claimed lien.

The lien claim, as filed, did not comply with the requirements of the law. It could not have been "enforced" under the former law. It cannot be "established" under the present law. An almost parallel set of facts, involving the same property but a different claimant, was presented in *Scott & Wimbrow v. Wisterco Inv., Inc.*, 36 Md. App. 274, 373 A. 2d 965 (1977). The lien was claimed against "structures at Lighthouse Sound", and against land described only by reference to the same deed. We said, at 278:

> "Given this description as the foundation of Wimbrow's bill of complaint to enforce the mechanics' lien, we need hardly go beyond it to hold that the chancellor was correct in sustaining appellees' demurrer to the bill."

We also discussed further defects, primarily the failure of the claim in that case to set forth the nature and kind of work or the kind and amount of materials furnished. What we concluded in *Scott & Wimbrow* is equally applicable here. We said, at 280:

> "The demurrer was obviously properly sustained for failure to describe the building or buildings, for failure to situate them in a reasonable locale, and for failure to describe the nature or kind of work or the kind and amount of materials furnished."

Appellant argues further that its lien claim and its bill to enforce the claim are readily amendable, except to enlarge the claim or materially alter the description of the property. There are amendment rights as to each, but we do not agree that a fault or defect in the lien claim can be cured by an allegation (original or amended) made in an equity pleading

filed a year later. The rights to amend are stated in the statute, then § 9-110, and in the Rule, then and now BG72.[7]

We consider it necessary to say only that an amendment of the lien claim which would set forth the locality of the building, or buildings, and a description adequate to identify them, would materially alter the description of the property against which the lien claim was recorded, *Scott & Wimbrow, supra.*

What we have said means that the lien claim was incurably defective. Judge Prettyman emphasized that the demurrer was being sustained because of the defects in the claim. He did not discuss the bill of complaint as a pleading. It is significant that the record discloses no request at any time for leave to amend. And, of course, since the 1 July 1974 revision of Maryland Rule 320, amendments of pleadings are made without leave of court, subject only to an opponent's motion to strike.

Although it seems evident that no amendment of a pleading could transform a bad lien claim into a good one, we think that in the interests of justice, appellant should have, for a period of 30 days from the date of our mandate, the opportunity, if it so desires, to amend its pleading to seek an *in personam* money judgment against the appellees, including the right to request transfer of the case to the law side of the court, under Maryland Rule 515.

> *Order of 1 October 1976 modified by deleting the phrase "without leave to amend by the plaintiff" and as modified, affirmed.*
> *Case remanded for further proceedings.*
> *Appellant to pay costs.*

---

7. The mechanics' lien laws were substantially changed, to conform with the constitutional requirements of *Barry Properties,* by Acts of 1976, ch. 349. The BG Rules were also substantially revised, for the same reason, effective 9 August 1976.