## WESLEY A. TYSON, SR. ET UX. v. MASTEN LUMBER & SUPPLY, INC.

[No. 240, September Term, 1979.]

*Decided December 6, 1979.*

The cause was argued before GILBERT, C. J., and COUCH and MacDANIEL, JJ.

*Augustus F. Brown* for appellants.

*Note: *Certiorari* denied, Court of Appeals of Maryland, February 22, 1980.

No brief or appearance for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## INTRODUCTION.

It is written that:

"Nothing in the world lasts
Save eternal change." [1]

This appeal, arising under the Mechanic's Lien Law is illustrative of the wisdom of those words.

The settled law of Maryland was jolted when the Supreme Court, in a series of cases, *Sniadach*,[2] *Fuentes*,[3] *Mitchell*,[4] and *North Georgia Finishing*,[5] tolled the death knell for this State's former Mechanic's Lien Law. Md. Real Prop. Code Ann. §§ 9-101 to 9-111 (1974). It was not until seven years after *Sniadach*, and one year after *North Georgia Finishing*, however, that the Court of Appeals, in *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976), presided over the interment on procedural due process grounds of the then Mechanic's Lien Law.

In laying to rest a statute that traced its roots to 1838,[6] Judge Digges, writing for the majority[7] in *Barry*, said:

"We ... hold that under the current statute [then Md. Real Property Code Ann. §§ 9-101 to 9-111 [8]]

---

1. Honorat De Bueil, Marquis De Racan (1589-1650), *Odes. The Coming of Spring.*

2. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

3. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *rehearing denied*, 93 S.Ct. 177, 180 (1972).

4. Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

5. North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

6. 1838 Md. Laws, ch. 205.

7. Judge Levine dissented and Judge Eldridge joined therein. 277 Md. at 39, 353 A.2d at 236.

8. The Court, in *Barry*, specifically did "not decide the constitutionality of § 9-107(a), which pertains to priority among holders of mechanics' liens." 277 Md. at 37, n. 13, 353 A.2d at 235, n. 13.

there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (i.e., a declaratory judgment action)." 277 Md. at 37, 353 A.2d at 235.

## THE LAW.

The legislative reaction to *Barry* was to enact an emergency law, effective May 4, 1976, eighty-three days after the *Barry* decision.[9] The new law was designed to avoid the procedural due process denial found in the former statute.

Prior to *Barry,* the statute permitted a lien to attach to a building and the land covered by it for material furnished or work done for or in or about the building. *Mervin L. Blades and Son, Inc. v. Lighthouse,* 37 Md. App. 265, 267, 377 A.2d 523, 525 (1977). The lien, which attached as soon as the work was done or the materials were furnished, took priority over other liens which attached subsequent to the start of the building, except other mechanics' liens, provided an action was filed to enforce it within 180 days. The mechanics' liens shared equality. *Id.* In order to preserve the lien past the 180 day period, it had to be filed in the appropriate circuit court within 180 days next following the performance of the work or the furnishing of the materials. Former section 9-105(e). If the laborer or material supplier was a subcontractor, that is, one who did not contract directly with the owner of the building, he was required to give notice to the owner within 90 days next following the performance of the work or delivery of the material of an intention to claim a lien. Former section 9-103(a); *Barry v. Fick,* 277 Md. at 19-20, 353 A.2d at 226; Recent Legislation, 6 U. of Balt. L. Rev. 181, 184 (1976).

The girth of the lien, as soon as the work was performed or the material supplied, immediately created a cloud on the

9. The new act, created by 1976 Md. Laws, ch. 349, repealed former sections 9-101 to 9-108, 9-111 and 9-113. At the same time the bill enacted new sections 9-101 to 9-110, and renumbered former sections 9-109, 9-110 and 9-112. Former section 9-112 became what is now known as section 9-113; sections 9-109, 9-110 became sections 9-111, 9-112, respectively. 1976 Md. Laws, ch. 349 is now codified as Md. Real Prop. Code Ann. §§ 9-101 to 9-113 inclusive.

title of the property concerned for the owner. *Id.* 277 Md. at 23, 353 A.2d at 228. That cloud, the Court of Appeals decided, deprived the owner of a " 'significant property interest' . . . and thus, the limitations of due process" were held applicable. 277 Md. at 24, 353 A.2d at 228.

The former Maryland law allowed "an owner to be deprived of a significant property interest without notice or a prior hearing." 277 Md. at 31, 353 A.2d at 232. The denial of notice or the prior hearing conflicted with the rationale of *Sniadach, Fuentes, Mitchell,* and *North Georgia Finishing, supra.*

The present law, as we have previously stated was enacted to cure the ills of the former statute. Under the current act a lien does not automatically attach to the owner's building upon the performance of work or the supplying of materials. It is only when a building is "erected . . . repaired, rebuilt or improved to the extent of 25 per cent of its value" [10] that a mechanic's lien *may* be established.

A person claiming a lien must file a proceeding in the circuit court for the county where the land or any part of it lies, within 180 days after the completion of the work or the furnishing of the materials.[11]

When, however, the petitioner is a subcontractor, he is not entitled to a lien, unless "within 90 days after doing the work or furnishing the materials, he gives written notice of his intention to claim a lien. . . ." Md. Real Prop. Code Ann. § 9-104(a) (1979). The new law requires that the notice be given in *substantially* the following form:

"Notice to Owner or Owner's Agent of
Intention to Claim a Lien

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Subcontractor
did work or furnished material for or about the building generally designated or briefly described as
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
The total amount earned under the subcontractor's undertaking to the date hereof is $ . . . . . . . . . . .

---

10. Md. Real Prop. Code Ann. § 9-102(a).

11. *Id.* § 9-105(a).

of which $ . . . . . . . . . . . . is due and unpaid as of the date hereof. The work done or materials provided under the subcontract were as follows: (insert brief description of the work done and materials furnished, the time when the work was done or the materials furnished, and the name of the person for whom the work was done or to whom the materials were furnished).

I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing notice are true to the best of the affiant's knowledge, information, and belief.

. . . . . . . . . . . . . . . . . . . . . . . .
(Individual)
on behalf of . . . . . . . . . . . . . . .
(Subcontractor)
(insert if subcontractor is not
an individual)"

"The notice," the statute provides, "is effective if given by registered or certified mail, return receipt requested, or [is] personally delivered to the owner by the claimant or his agent." § 9-104(c). Notice to one of several owners is notice to all. § 9-104(d).

After the petition to establish the lien has been filed, the court is charged with the duty of reviewing the "pleadings and documents on file and may require the petitioner to supplement or explain any of the matters" set out in the petition. § 9-106(a)(1). If the court, following the required review, believes that a lien should attach, "it shall pass an order that directs the owner to show cause within 15 days from the date of service on the owner . . . why a lien upon the land or building" ought not attach. *Id.* In addition, the order must inform the owner that he may (1) appear at the designated time stated in the order and present evidence in his own behalf as to why the lien should not attach; or (2) file a counter-affidavit on or before the time he is to appear. § 9-106(a)(1)(i). If the owner fails to appear or to file a counter-affidavit, the statute mandates that "the petitioner's

claim shall be deemed admitted and a lien may attach to the land or buildings described in the petition." §§ 9-106(a)(1)(ii).

The owner is at liberty to controvert statements of fact in the petitioner's claim, but to do so, he must support his answer to the show cause order issued pursuant to section 9-106(a)(1) by an affidavit. § 9-106(a)(2). The failure to file such an affidavit constitutes an admission of the truth of facts contained in the affidavit supporting petitioner's claim. *Id.*

Whenever an answer is filed to a show cause order, the court is directed to set the matter "for hearing at the earliest possible time." [12] § 9-106(a)(3).

If the pleadings and allied papers, together with the evidence, if any, demonstrate "that there is no genuine dispute as to any material fact and that the lien should attach as a matter of law," the court shall enter a final order establishing the lien. § 9-106(b). Even when the pleadings, affidavits, admissions, and evidence, if any, show no genuine dispute as to a material fact, the court is not justified in permitting the lien if the petitioner fails to establish his lien as a matter of law. § 9-106(b)(2). 6 U. of Balt. L. Rev., *supra* at 188.

The court is empowered by section 9-106(b)(3) when it finds "probable cause" to believe the petitioner is entitled to a lien

---

12. Other statutes contain similar legislative directions. *See e.g.,* Md. Ann. Code art. 89, § 38(d) (1979) (judicial review of order of Division of Labor and Industry to be heard "expeditiously"); *Id.* Art. 89, § 76(e); Art. 95A, § 15(f) (1979) (Unemployment Insurance Law — Collections — "entitled to preference upon the calendar ... over all other civil actions except ... Workmen's Compensation [appeals]"); Art. 101, § 56(a) (1979) (Workmen's Compensation "All appeals from the Commission shall have precedence over all cases except criminal cases"); Art. 48A, § 242B(2) (1979) (Insurance Code — rates — appeal to be heard and decided by Baltimore City Court within 60 days from date of filing of notice of appeal); Art. 66A, § 19(a) (1978) (Motion Pictures — Censor Board disapproval decision to be heard by Circuit Court for [*sic*] Baltimore City within 5 days, and decided within 2 days thereafter); Art. 78, § 93(b) (1979) (Appeals from the Public Service Commission "shall be preferred over all other civil causes ... irrespective of their position on the dockets"); Art. 33, § 19-3 (1979) (Elections — appeal to Court of Special Appeals within 5 days after trial court decision and to be "decided by the Court of Special Appeals as soon ... as may be practicable...."). Patently, compliance with the legislative preferences referred to above is impracticable if not impossible in view of the conflict among the statutes.

to pass an interlocutory order that establishes the lien, describes the boundaries of the land or building to which the lien attaches, states the amount of the claim, the amount of bond necessary to release the property from the lien, and assigns a date for trial, actionable up to six months from the date of the order. Additionally, the court may require the claimant to file a bond in a sum sufficient to satisfy damages, including reasonable counsel fees. § 9-106(b)(3)(i)-(vi).

Any interested person may at any time move the court to dissolve or modify the interlocutory order, 6 U. of Balt. L. Rev. *supra* at 189; § 9-106(b)(3)(vi), or ask for additional bond. § 9-106(c). Money, of course, in equal amount may be used instead of a bond. § 9-106(c).

No final order establishing the lien should be entered until and unless the petitioner prevails in an appropriate proceeding. *Residential Industrial Loan Co. v. Weinberg,* 279 Md. 483, 487-88, 369 A.2d 563, 566 *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977).

## THE INSTANT CASE

Masten Lumber & Supply, Inc., the appellee, asserted that it had furnished lumber and other materials to Brick Homes, Inc., at the property of the appellants, Wesley A. Tyson, Sr., and Eleanor M. Tyson, his wife, in Cecil County, Maryland, on May 22, 1978. The date of delivery, although controverted by the Tysons, was found by the trial judge to be that stated by the appellee's location manager, Morris G. Jones and by its truck driver, Dale H. Biederman. Payment not having been received, the appellee, through its counsel, sent a letter to the appellants. The letter read:

"August 9, 1978

Mr. and Mrs. Wesley A. Tyson, Sr.
Post Office Box 282
R. D. 2
North East, Maryland 21901

Dear Mr. and Mrs. Tyson:

This letter is to advise you that I represent Masten

Lumber & Supply, Inc., of Milford, Delaware. They furnished lumber and materials for the construction of your home on Lot 4, Hance's Point Manor, Cecil County, Maryland, for Brick Homes, Inc., and have not been paid the balance due them by Brick Homes, Inc.

The outstanding balance due Masten Lumber & Supply, Inc. is $6,737.10, and this letter will serve as notice to you that we intend to file Mechanic's Line [*sic*] on the property in order to ensure payment due our client.

I would suggest you turn this letter over to your attorney and/or the Bank that is financing you to ensure they withhold enough funds to pay off Masten Lumber & Supply, Inc., because the lien would be against your property and collectible through court action.

Very truly yours,

v

S/<br>Edward D. E. Rollins, Jr.

EDER, jr/mb

*REGISTERED MAIL."*

No reply was made to the letter, whereupon a "Petition to Establish Mechanic's Lien" was filed in the Circuit Court for Cecil County on October 11, 1978. An affidavit in support of the petition and exhibits was filed simultaneously. The court signed a "show cause order" and directed the Sheriff of Cecil County to effect service of process. The Sheriff made his return on October 27, 1978. The same day an answer to the petition and show cause order were filed by the appellants. The answer was accompanied by the necessary affidavits. The appellant served five written interrogatories. Md. Rule 417. The interrogatories were not answered until 2:50 p.m. on the date of the hearing on the show cause order.

The transcript reveals the following dialogue:

"The Court: . . . Now, gentlemen, what's the issue

before the Court, the issue to be decided in this case today?

Mr. Brown [Counsel for appellants]: Your Honor, the only issue to be decided today is the determination of whether the Court should issue an interlocutory order granting a mechanic's lien to the Plaintiff, Masten Lumber and Supply, Inc., and, if so, to establish the boundaries, the amount of the claim for probable cause [*sic*] [13] any bond that would be required to be filed, and the other two items that are necessary under Section 9106 [*sic*] [14] of the Real Property Article of the Maryland Code.

The Court: All right. . . ."

Counsel for the appellee, Masten, made no response to Mr. Brown's view of the issue before the court. The matter proceeded with the taking of testimony.

At the conclusion of the evidence presented in behalf of Masten, the appellants, through their counsel, moved for a dismissal, Md. Rule 535, on the basis of the fact that the "notice" sent by Masten's attorney to the appellants contained "no verification at all to the Tysons, something that the Legislature considered substantially important as far as giving notice to an owner is concerned." Counsel also suggested that the letter had not been sent by certified mail. He then suggested to the court "that the lien should not issue because of those two items, for failure to comply with the law in giving notice to them."

The judge believed that the notice sent to the Tysons "certainly gives them notice of the intention to file a lien for lumber, materials furnished for the construction of their home on this particular lot in Hance's Point." We agree. Any fair reading of the letter from Masten's counsel to the appellants readily reveals that the notice contains some of the

---

13. This is obviously a deletion of words either by counsel or the court reporter. It should read, "the amount of the claim for which probable cause is found." Md. Real Prop. Code Ann. § 9-106(b)(3)(iii).

14. "Section 9106" should read: "Section 9-106."

requisite information relative to the lien.[15] The only deficiency argued is that it was not "verified." The act, however, does not require mathematical precision. By its very terms, what is needed is substantial compliance. While the verification is missing, the Tysons were not in any way misled or deceived. The fact is that they noted an answer on the same day they were served with the petition, thus indicating that they knew full well what the notice contained and were primed to mount their defense. All that seemingly remained to be done was for the petition, that would trigger the litigation, to be filed in order for issue to be joined. Actual knowledge may supplant formal statutory notification. *Clark v. Wolman,* 243 Md. 597, 600, 221 A.2d 687, 688 (1966). *Accord, Rolfe v. Clark,* 269 Md. 14, 18, 304 A.2d 231, 233 (1973). *See also Cottman v. Department of Natural Resources,* 44 Md. App. 224, 407 A.2d 802 (1979).

The record discloses that the notice was sent by registered mail on August 10, 1978. Although no return receipt is in the record, there is no question but that the Tysons received the notice. Under the circumstances, we think the notice substantially complied with the statute. The appellants' argument with respect thereto is without merit.

The appellants, however, pose a more substantial argument as to why the "final" order establishing the lien should be reversed. They lament that the trial court used a short cut to judgment, one that is not sanctioned by the statute. Moreover, they say, it denied them an opportunity to present their entire case. We agree.

The trial court adhered strictly to the statute until the conclusion of the hearing on the show cause order. § 9-106(b)(1); Md. Rule BG 73 c. Apparently, losing sight of the precise issue before it, *i.e.,* whether there was probable cause for the establishment of the lien, § 9-106(b)(3), the court proceeded to rule "that a mechanic's lien may attach in this case for the amount [of $6,595.20]." A formal order to that effect was signed on January 19, 1979.

---

15. The "notice" sent by Masten's attorney did not state the "time when ... the materials [were] furnished." This issue, however, has not been raised. We do not decide it.

Counsel for the appellants reminded the court that all it had before it at the hearing was the matter of "probable cause," and that the case had not been tried on its merits. The judge was of a different view. He responded to the appellants' attorney that, "As far as I am concerned, all issues in this matter have been resolved by me sufficiently to enter such ... [a final] order. To schedule another hearing would be repetitious."

What the judge overlooked was the limited role he was to play at the point in time when the hearing on the show cause order was scheduled. From what we have stated, it is obvious that the parties appeared before the court solely on the show cause order. At that stage, the court is to decide whether there is a genuine dispute of a material fact. § 9-106(b)(3); Md. Rule BG 73 d 2. The court was not justified in weighing the evidence and adjudicating the case because he was in the same position as a judge passing upon a motion for summary judgment. Md. Rule 610. Cases are legion under Rule 610 that if the pleadings, affidavits, exhibits and evidence show that there is a genuine dispute of a material fact, the court may not enter judgment.[16] Unmistakably, the evidence, affidavits and pleadings, in the instant case, demonstrated that there was a genuine dispute of a material fact, namely the date of delivery of the materials. For that reason alone, the judge should not have entered a final order, but instead he should have followed the clear direction of § 9-106(b)(3) and Md. Rule BG 73 d 2 and should have passed an interlocutory order setting out the perimeters of the lien and setting the matter for the trial of all issues necessary to final adjudication. Md. Rule BG 73 d 2 (vi).

There is yet another reason in the case now before us as to why the "final order" should not have been entered. Patently, the appellants appeared in court in answer to the show cause order. They made unmistakable the limited purpose of their visitation. Furthermore, they were not

___

16. *See, e.g.,* Lynx, Inc. v. Ordnance Products, Inc., 273 Md. 1, 327 A.2d 502 (1974); Salisbury Beauty Schools v. State Bd. of Cosmetologists, 268 Md. 32, 300 A.2d 367 (1973); Josey v. Allstate Ins. Co., 252 Md. 274, 250 A.2d 256 (1969); McKinney Drilling Co. v. Mach I Ltd. Partnership, 32 Md. App. 205, 359 A.2d 100 (1976).

304

supplied, until literally the twelfth hour, with the answers to the interrogatories they had propounded to the petitioner, and they were in no position then to evaluate the answers and decide what other, if any, discovery they would employ.

The method of rushing to judgment that the trial judge utilized in the matter *sub judice* did not comply with the statute, § 9-106, nor with Md. Rule BG 73 d. It did not comport with due process under either the Maryland Declaration of Rights, art. 23 [17] or the Fourteenth Amendment to the Constitution of the United States.

> *Order establishing mechanic's lien reversed.*
> *Case remanded for further proceedings.*
> *Costs to be paid by appellee.*

---

[17]. Article 23 of the Maryland Declaration of Rights has the same meaning and effect as the Fourteenth Amendment to the Federal Constitution. Barry Properties v. Fick Bros., *supra,* 277 Md. at 22, 353 A.2d at 227; Bureau of Mines v. George's Creek, 272 Md. 143, 321 A.2d 748 (1974).