490 A.2d 252

**OCEAN PLAZA JOINT VENTURE**

v.

**CROUSE CONSTRUCTION CO., INC.**

**No. 642, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 8, 1985.

**436**

438

Edgar H. Gans, Baltimore (John G. Wharton and Niles, Barton & Wilmer, Baltimore, on the brief), for appellant.

Glenn E. Bushel, Baltimore (Robert E. Cahill, Jr. and Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, on the brief), for appellee.

Argued before MOYLAN, GARRITY, and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

In this appeal, we consider the effect of an order issued under the mechanics' lien statute, Md. Real Property Code Ann., § 9–106 (1981, 1983 Cum.Supp.).

The Knott Company (Knott) entered into a contract under which it agreed to design and construct the Ocean Plaza Shopping Center in Ocean City, Maryland, in return for a lump sum payment. Knott subcontracted the excavation and grading portion of the project to Crouse Construction Company (Crouse). This agreement required Crouse to complete the work in accordance with specified plans and drawings contained in the general contract. The subcontract provided for a lump sum payment of $305,000, but the amount could be increased if the general contractor or the owner authorized extra work in writing. Without this prior written authorization, Crouse waived its right to claim additional compensation. Similar modifications of the amount under the general contract required the owner's written approval of change orders submitted by Knott. The owner is Ocean Plaza Joint Venture (OPJV).[1] Each contract also provided for retainage: (1) The general contract stipulated a 10% retainage or holdback in payment until the architect executed a certificate of completion; (2) The subcontract provided for a 10% retainage until Knott received final payment from OPJV.

Before the excavation began, Knott informed Crouse that, instead of using the fill pit they had specified, Crouse would have to use a pit located two miles further from the construction site. The subcontractor hauled materials to the latter pit between July 27, 1982, and September 1982, but did not obtain a change order, written authorization, or an agreement to extra compensation before or after the

---

1. The original named owner under the contract was Ocean City Development Corporation. Any issues that the transfer of interest may have engendered are not pursued in this appeal.

use. When Crouse filed its claim for the mechanics' lien, however, it included a claim of $34,841.52 for the extra cost of hauling the greater distance. According to testimony relating to the additional hauling required, it was ordinary practice to perform the extra work and submit a change order later.

On October 4, 1982, Crouse executed a change order to increase the subcontract amount from $305,000 to $309,500 for "loading" borrow materials. The agreement previously did not include compensation for loading. No mention of extra compensation for hauling the additional four miles per round trip appeared in this change order, nor in the next one submitted on April 7, 1983. This second order sought to adjust the figure on the prior change order to include additional excavation and grading costs, making the total subcontract amount $315,638.68. On May 9, 1983, Crouse executed a Waiver of Liens against Knott specifically acknowledging payment of the agreed lump sum plus extras as of May 5, 1983, with a remaining balance due of $4,585.88 plus the 10% retainage. This release also noted the total contract figure as "$311,052.80+".[2] Evidence indicated that an estimate had been submitted to cover the extra hauling, which exceeded the amount ultimately billed.

---

**2.** We note that this total does not reconcile with the prior change orders. The waiver specified only the following figures:

| | |
|---|---|
| Original Contract Amount | $305,000.00 |
| Change Orders | 6,052.80 |
| Total Contract | 311,052.80+ |
| Total Billed to: 4/30/83 | 311,638.68 |
| Less Retention: | 30,500.00 |
| NET DUE | $281,138.68 |
| Payments Received to: 4/15/83 | 276,552.80 |
| Balance Due as of: 5/5/83 | $ 4,585.88 |

On the April 7 change order, $6,052.80 was noted as "previous change orders." It is unclear where this figure came from, because the October 4 change order was for $4,500, and the April 7 change order was for $4,585.68. This would make the total contract amount $314,085.68. The parties do not explain this discrepancy in their briefs, nor do either of them take issue with it.

Upon receipt of the required Waiver of Liens and verified draw form, the lender for OPJV disbursed the requested funds to Knott, the general contractor.

Crouse filed this mechanics' lien action against OPJV in the Circuit Court for Worcester County. The petition contended that $70,371.27 [3] remained due and owing for its work regarding the Ocean Plaza Shopping Center. The claim represented four items: (1) the extra cost of hauling fill material—$34,841.52; (2) the unpaid balance from an invoice dated October 25, 1983—$4,000; (3) the balance due from an invoice dated March 3, 1983—$729.75; and (4) the retainage withheld on the entire job—$30,500. These figures appear in Crouse's records as amounts due. The subcontractor also filed the affidavit of Richard Crouse which described the details of the work done.

OPJV responded stating first that Crouse breached Section 11 of the subcontract, which required Crouse to submit to Knott "on a daily basis, duplicate payroll sheets, material tickets, and a statement, or slips for all other charges when performing additional work...." Also, due to disputes between OPJV, Knott, and Crouse, OPJV had not paid the retainage otherwise due Knott. As a result, the owner requested a dismissal of the petition. In support of its Answer, OPJV filed two affidavits: (1) Frank J. McGinnes, President of Knott, alleged that Crouse failed to furnish the documents required by the subcontractor for performing additional work, and that OPJV did not pay Knott the 10% retainage; (2) Richard M. Singer, a partner of OPJV, stated that the retainage had not been paid to Knott, and that other monies remained unpaid "due to disputes between Crouse Construction Company, The Knott Company and [OPJV]." Nowhere in these pleadings did OPJV assert the defense of waiver of liens.

On November 30, 1983, the court conducted a show cause hearing and issued an interlocutory order in the amount of

---

**3.** This total was inaccurate, but later corrected to $70,071.27.

$70,371.27[4] and established a mechanics' lien on the property. The court also provided for the release of the property upon the owner's posting bond and directed the scheduling of a hearing on the merits.

The trial on the merits occurred on January 31, 1984. At the outset of the trial, the court announced that, because many of Crouse's allegations remained uncontroverted by OPJV's answer and affidavits, they were deemed admitted. Thus, the court would only hear two issues.

During these proceedings, two documents—a "General Release of Liens" dated August 31, 1982, and a "Waiver of Liens" dated May 9, 1983 [5]—were received into evidence in relation to the amount of the lien, and Crouse did not object. They were offered by OPJV during questioning of the president of Crouse concerning the delay between the actual hauling and the submission of an invoice. He testified that the February 21, 1983, invoice for $34,841.52 on which he based part of his claim covered the cost of the extra distance travelled to the fill pit during July, August and September of 1982. The president admitted that this work was performed before he signed the waiver and, therefore, he could have demanded the extra amount as of September 1982. But because the figure was not calculated until February 1983, Crouse submitted the invoice instead of seeking approval of the charge as an extra.

The cross-examination of Crouse's corporate secretary revealed that the company had received an additional back charge of $6,600 from Knott shortly before trial for work actually performed by another contractor. The president of Crouse verified that he had agreed to back charges of up to $5,000 for uncompleted work.

---

**4.** This was the amount requested by Crouse in its Petition to Establish and Enforce Mechanics' Lien. The itemization did not justify this total and it was later corrected.

**5.** Hereafter, these forms will be referred to as General Release and Waiver, respectively.

Singer, a general partner of OPJV, indicated that monies were released to the general contractor only after the owner's lender received written certification that the subcontractors obtained their draw and executed waivers of liens. He further averred that Crouse had not presented OPJV with an extra based on having to travel a further distance to the fill pit, nor had OPJV authorized one. Singer then stated that the excavation work by Crouse was one of the reasons Knott could not obtain architectural certification. At this point, because the court had ruled at the opening of the trial that the amount of the lien was not contested, it refused to permit additional testimony designed to prove that Crouse failed to properly perform the contract. To preserve the record, OPJV then proffered the testimony of the engineer, the contractor from whom additional fill was purchased, and the paving contractor. OPJV stated that these witnesses would introduce proof that Crouse did not perform some of the work and completed other work improperly, thereby entitling OPJV to a setoff in the amount of $28,300.

In its opinion and decree, the court recited that it was resolving the case "as if no waivers of liens ... exist" because OPJV neglected to deny in its Answer that monies for extras were due Crouse and that Crouse had waived its lien. The evidence further convinced the court that "Crouse was doing as Crouse was told to do by Knott." The court also concluded that the project was substantially completed; hence, there was no reason for the continued withholding of the retainage. It, therefore, established the lien sought by Crouse.

The circuit court entered a decree establishing the final mechanics' lien in the amount of $70,141.27 [6] and ordering the sale of the property unless the lien was paid on or before April 14, 1984. OPJV appeals this decision.

---

6. This figure represented a lien of $70,071.27 plus court costs of $70.00. At the beginning of the proceedings on January 31, 1984, counsel for Crouse advised the court that this was the appropriate balance claimed, instead of the $70,371.27 set forth in its Petition.

At the outset, we note that the real war is between OPJV and Knott. This produced a fight between Knott and Crouse. For reasons on which we will not speculate, we have here a skirmish between Crouse and OPJV, rather than the three-way battle which would have ensured a full and complete resolution of the disputes. Be that as it may, we are limited to the conflict presented here.

Appellant specifies several issues on appeal:

(1) Whether the trial court erred in ruling that appellant was required to assert in its answer that appellee consented to waive liens.

(2) Whether the court erred in ruling on the day of trial that appellant admitted appellee performed the work because appellant failed to allege facts in its answer that would have put the issue in dispute, when the court had determined at the show cause hearing that all issues pleaded were in dispute.

(3) Whether the trial court erroneously excluded evidence regarding appellee's performance of the work because appellant did not sufficiently deny the allegation in its affidavit.

(4) Whether the court properly reviewed the case as if no waiver of liens existed even though waiver forms had been admitted on another issue during trial.

We hold that the court did not err in requiring appellant to assert affirmatively the waiver of liens in order to rely on that defense. Although we do not agree with some of appellant's assumptions, the next two issues depend upon the effect of the interlocutory order in a mechanics' lien case for their resolution. The last is likewise dependent, presenting in addition an evidentiary problem.

## INTERLOCUTORY ORDER

### *Procedure*

To establish a mechanic's lien in Maryland, a claim-ant "must file a proceeding in the circuit court for the

county where the land or any part of it lies...." *Tyson v. Masten Lumber & Supply, Inc.*, 44 Md.App. 293, 296, 408 A.2d 1051 (1979), *cert. denied*, 287 Md. 758 (1980); Md. Real Property Code Ann., § 9–105(a) (1981, 1983 Cum.Supp.).[7] The court does not enter a "final order establishing the lien ... until and unless the petitioner prevails in an appropriate proceeding." *Tyson*, 44 Md.App. at 299, 408 A.2d 1051; *Residential Industrial Loan Company v. Weinberg*, 279 Md. 483, 487–88, 369 A.2d 563, *cert. denied*, 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977). This may be at the show cause hearing or at trial.

These proceedings begin when the claimant files a petition and supporting affidavits, which the court then reviews. If a lien appears warranted, the court "directs the owner to show cause" why the lien should not attach. Md. Real Property Code Ann., § 9–106(a), *supra*; Md. Rule BG73 a. To controvert the facts presented by the claimant, the owner must "file an affidavit in support of his answer showing cause." Md. Real Property Code Ann., § 9–106(a)(2), *supra*. Failure to do so results in an admission of the statements of fact contained in claimant's affidavit. *Id.*; Md. Rule BG73 b. Furthermore, failure to plead specially the defense of waiver of liens in the owner's answer results in the loss of that defense. *See* Md. Rules 371 and 342 c.[8] The waiver of liens defense constitutes an avoidance of the claim under the Rule. Because it is not one of the defenses that may be raised at any time, Md. Rule 323 b,[9] it must be asserted in the answer.

---

7. This procedure differs from the prior statute which imposed a lien automatically and was declared unconstitutional in *Barry Properties, Inc. v. Fick Brothers Roofing Company*, 277 Md. 15, 353 A.2d 222 (1976). *See also, Tyson, supra.*

8. The requirement of including all defenses in an answer appears in Rule 2–323 of the Md. Rules which became effective July 1, 1984. Md. Rule 2–324 addresses the preservation of defenses. These provisions remain substantively the same as the comparable requirements of Rules 342 c and 371.

9. This provision appears in Md. Rule 2–324 effective July 1, 1984.

Based on the evidence, the court may conclude that a dispute exists concerning whether the lien should attach or regarding the amount in which it should attach. Upon determining that "there is probable cause to believe the petitioner is entitled to a lien, the court shall enter an interlocutory order...." Md. Real Property Code Ann., § 9–106(b)(3); Md. Rule BG73 d 2. In pertinent parts, this order

"(i) Establishes the lien;

\*　　\*　　\*　　\*　　\*　　\*

"(iii) States the amount of the claim for which probable cause is found;

\*　　\*　　\*　　\*　　\*　　\*

"(vi) Assigns a date for the trial of all the matters at issue in the action ... The owner or any other person interested in the property, however, may, at any time, move to have the lien established by the interlocutory order modified or dissolved."

Md. Real Property Code Ann., § 9–106(b)(3), *supra.*

### Effect

█ This Court distinguished the entry of a final order from an interlocutory order establishing a mechanic's lien in *Tyson, supra,* by interpreting Md. Real Property Code Ann., § 9–106(a)(3), *supra.* Preliminarily, the Court noted that the purpose of the show cause hearing is to determine whether "a genuine dispute of a material fact" exists. *Tyson,* 44 Md.App. at 303, 408 A.2d 1051. In this respect, the court reviews the pleadings in the same way as it evaluates a motion for summary judgment. Only when the evidence presents no conflict does the court enter a final order establishing the lien. *Id.* at 298, 404 A.2d 1051. If the pleadings and affidavits indicate a dispute, however, a final order is inappropriate, and "the judge ... should [pass] an interlocutory order setting out the perimeters of the lien and setting the matter for the trial of all issues necessary to final adjudication." *Id.* at 303, 404 A.2d 1051.

In effect, the interlocutory order, like a summary judgment, does not become dispositive of the case until final judgment is entered. *See Residential Industrial Loan Company, supra; Mervin L. Blades & Son v. Lighthouse Sound Marina & Country Club,* 37 Md.App. 265, 377 A.2d 523 (1977).

In addition, the entry of an interlocutory order is based on a determination of probable cause for belief that a lien should attach. This assessment, however, differs from the ultimate standard of proof required. To prevail in a civil suit, a party must prove his case by a preponderance of the evidence. *See Carter v. Carter,* 139 Md. 265, 114 A. 902 (1921). While the pleadings alone may support a lien, the testimony presented by the parties at trial may warrant a different conclusion. Effectively, the finding of "probable cause" for a lien means that the claimant has made a *prima facie* case. If no additional testimony is presented to contradict or explain that evidence, the finding becomes conclusive. *See Baltimore American Underwriters v. Beckley,* 173 Md. 202, 208, 195 A. 550 (1937). Upon the introduction of conflicting evidence, however, the claimant must prove his case by a preponderance of the evidence. *Id.* At this juncture, the prior determination of probable cause, like the *prima facie* case, no longer controls. Because the interlocutory order is not final and is based on a lesser standard of proof, it follows that it may be set aside at the trial, pursuant to the introduction of additional evidence.

## Present Case

The trial court issued an interlocutory order in the present case which established a lien and set the remaining issues for trial, but did not specify what those issues were. On the first day of the hearing on the merits, the court corrected the amount of the lien and delineated the issues to be decided. The court announced it would address only two questions, which appellant specifically raised in its answer and affidavit: (1) whether appellee breached the subcon-

tract with Knott (namely, the failure to submit documentation of any extra) and, if so, the effect of the breach on the enforcement of the lien; and (2) whether appellee was entitled to payment pursuant to the retainage provision of the subcontract.

■ Preliminarily, we note that the court's delay in specifying the issues adversely affected the parties. If the issues had been set forth by the court at the show cause hearing, the parties could have amended their pleadings to contest specifically the amount of the lien. Md.Rule 320.[10]

The amount of the lien was not included as one of the issues to be decided, but the court admitted into evidence the General Release and the Waiver signed by appellee. Apparently, these forms were introduced to show the proper figures and the lack of any amount representing the hauling charges—after introducing the forms, appellant proceeded to argue that the extra hauling costs should not be included as part of the lien, because appellee had never submitted a bill for them. Appellant then sought to present testimony that would show appellee did not complete the work alleged in its Petition and performed some of it improperly. The court declined to hear the evidence, stating that it did not matter who completed the work, but rather, whether it was completed.

■ The refusal of the trial court to consider the issue relating to the amount of the lien was error. First, the amount set by the interlocutory order was not a final assessment, but a calculation based on the affidavits. Md. Real Property Code Ann., § 9–106(b)(3), *supra; see also, Tyson, supra.* In fact, the court seemed to recognize this when it changed the figure from $70,371.27 to $70,071.27 on

---

**10.** This provision now appears in Md. Rule 2–341 and, unlike the former rule, distinguishes between amendments made more than 15 days before trial and those made within 15 days of trial. During the latter period, the amending party needs the written consent of the adverse party or leave of court.

the first day of the hearing on the merits due to a previous mathematical error.

Although neither party directly objected when the court limited the issues and stated the amount of the lien, appellant raised the issue when it attempted to introduce evidence of the amount and insufficient performance. Not only did appellant introduce the Waiver and General Release forms, but it was prepared to call three additional witnesses, each of whom it was proffered would testify that appellee did not perform some of the work and performed some of it improperly. This created a dispute concerning a material fact—the amount of the lien. As such, it sufficiently contradicted the evidence supporting the interlocutory order to preclude appellee's *prima facie* case from becoming conclusive. *See Baltimore American Underwriters, supra.* The court, therefore, should have heard all the evidence and made a determination based on a preponderance of the evidence. *See id.*

## WAIVER OF LIENS

The remaining issue involves the admission of the General Release and Waiver forms. As we mentioned above, appellant did not specially plead the defense of waiver of liens when responding to appellee's claim and, therefore, could not raise that defense later. Hence, the forms could not be admitted to establish that appellee waived its lien. *See Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582 (1948).

At the trial, the court preliminarily ruled that the amount of the lien was not in dispute—it set the amount of the lien and limited the issues on which the parties could present evidence. Contrary to this restriction, appellant cross-examined appellee concerning: (1) whether the work had been completed, and (2) why no claim had been submitted for the extra hauling costs, even though the hauling work had been completed and an estimate had been available. During the questioning, appellant introduced the two forms signed by

appellee; appellee did not object. No indication appears in either the record or the briefs, however, as to the reason the court admitted this evidence.

The problem arises from the events that followed this ruling. At the close of appellee's case, appellant moved for a directed verdict on the ground of waiver of liens as evidenced by the two forms. Although appellee did not verbalize any objection, he physically objected (as the court recognized "He is jumping up and down."). The court instructed the parties to submit memoranda on the issue of the admissibility of the Waiver and General Release and reserved ruling on it.

In its memorandum, appellee stated that because appellant did not raise the defense of waiver of liens in its answer, it could not assert the defense at all. As a result, the forms could only be admitted if relevant to the two issues framed at the beginning of the trial. Since they were not, they should be denied admission. Appellant responded in its memorandum that it had complied with the mechanic's lien statute by entering a general denial, which it argued sufficiently raised the issue. The forms, therefore, were admissible as direct proof of appellee's waiver.

After consideration of the memoranda, the court concluded that it would decide the case without regard to any waiver of liens. As its reason, the court stated that appellant had failed to comply with the procedural requirement that it specially plead that defense.

In this Court, appellant claims that once the Waiver and General Release forms were admitted into evidence, the court could consider them for all purposes. Appellee repeats its contention that the admission of the forms is limited to the issues before the court because appellant did not affirmatively plead waiver of liens; since the amount of the lien was not at issue, they could not be considered for any purpose.

### Admissibility

The trial court correctly excluded the forms as evidence of appellee's waiver of its lien. The forms could not be admitted for this purpose, because appellant's failure to plead specially the issue eliminated it from the case. Md. Rules 342 c and 371.

■ As we discussed above, however, the amount of the lien was potentially a disputed issue of a material fact, Md. Real Property Code Ann., § 9–106(a)(3); *Tyson,* 44 Md.App. at 303, 408 A.2d 1051, which appellant raised by introducing the forms and proffering testimony to show appellee's lack of performance. Because the issue should have been decided, the forms should have been admitted to the extent that they were relevant. *See Kennedy v. Crouch, supra* (evidence that is relevant to a material issue is admissible); *Supreme Builders, Inc. v. Redmiles,* 250 Md. 446, 455–56, 243 A.2d 500 (1968) (evidence may be admitted for a limited purpose).

Hence, we hold the court erred in refusing to consider the forms on the issue of the proper amount of the lien.

### Preservation for Review

■ When a party presents evidence, a timely objection must be made to its admission to preserve the point on appeal; failure to object precludes appellate review. Md. Rule 522 d 2.[11] To be timely, the objection must be entered either "at the time when such evidence is offered, or as soon thereafter as the objection to its admissibility shall have become apparent...." *Id.* The court in the present case complied with the latter portion of the Rule when it allowed appellee to object to the prior admission of the General Release and Waiver forms at the end of its case; only when appellant sought a directed verdict based on

---

11. This provision now appears in Md. Rule 2–517(a) and is substantively unchanged.

waiver did it become apparent that the forms might be inadmissible.

■■■■■■■ When entering an objection, the Rule does not require that a party state the grounds for it unless the court so requests. Md. Rule 522 b.[12] If no reasons are specified, the party is entitled to general review of the objection on appeal, *Blondes v. Hayes*, 29 Md.App. 663, 668, 350 A.2d 163 (1976), but if specific grounds are presented, only those bases may be considered on appeal—all other grounds are waived. *Von Lusch v. State*, 31 Md.App. 271, 286–87, 356 A.2d 277 (1976), *rev'd. on other grounds*, 279 Md. 255, 368 A.2d 468 (1977); *Wilt v. Wilt*, 242 Md. 129, 133–34, 218 A.2d 180 (1966).

■■■■ In the case before us, the reasons for appellee's objection appeared in its memorandum, i.e., because appellant failed to plead specially the defense of waiver of liens, it could not offer the General Release and Waiver forms to prove such a waiver at trial. Hence, the forms were only admissible on the two issues before the court. As we stated above, the court should have considered the additional issue of the amount of the lien. Since no objection was made on this ground, we hold the forms should have been admitted to support that issue.

## Conclusion

For these reasons, we reverse and remand the case for a new trial. The court's refusal to consider the issue of the amount of the lien was error, as was the subsequent refusal to consider the General Release and Waiver forms for that limited purpose.

JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL. COSTS TO BE PAID BY APPELLEE.

---

12. This provision is now in Md. Rule 2–517(c).